912 P.2d 284

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Joaquin BUENDIA, Defendant–Appellant.**

**No. 16198.**

Court of Appeals of New Mexico.

Jan. 9, 1996.

Tom Udall, Attorney General and Katherine Zinn, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, for Defendant–Appellant.

*OPINION*

BLACK, Judge.

Joaquin Buendia (Defendant) was convicted of two counts of unlawful dealing in federal coupons, contrary to NMSA 1978, Section 30–16–7 (Repl.Pamp.1994). Defendant argues the trial court erred in refusing Defendant's requested instruction on entrapment and that there was insufficient evidence to support his conviction. We hold the trial court erred in requiring Defendant to admit

every element of the crime before allowing the entrapment defense but, because we find sufficient evidence to support the conviction, we remand for a new trial.

## I. STANDARD OF REVIEW

New Mexico follows a two-step approach when considering the objective entrapment defense and different standards of appellate scrutiny are appropriate to each step. *State v. Sheetz,* 113 N.M. 324, 327, 825 P.2d 614, 617 (Ct.App.1991). First, the trial court must determine the proper standards of police investigation, which is a question of law. *Id.* The trial court's decision on this aspect of the case is freely reviewable on appeal. *Id.* The second step is for the trial court to determine whether the facts will support an instruction on entrapment. *See id.* at 327, 329, 825 P.2d at 617, 619. This is a fact-based decision which requires appellate deference to the fact finder. *See State v. Lucas,* 110 N.M. 272, 276, 794 P.2d 1201, 1205 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990).

In reviewing the sufficiency of the evidence to support a conviction, this Court must view the evidence in the light most favorable to the State, indulging all reasonable inferences in favor of the jury's verdict. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). It is this Court's duty " 'to determine whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt.' " *State v. Aguilar,* 117 N.M. 501, 504, 873 P.2d 247, 250 (quoting *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 168, 130 L.Ed.2d 105, *and cert. denied,* —— U.S. ——, 115 S.Ct. 182, 130 L.Ed.2d 116 (1994).

## II. FACTS

In 1993, the Eddy County Metro Narcotics Unit enlisted Ruben Montez, a former police officer, to act as an undercover agent in "Operation Badlands." Agent Montez was given food stamps to sell or trade for drugs.

Defendant worked on a hay farm in Eddy County. It was his testimony that govern-ment agents approached him about a potential drug deal, but he rejected their advances. Later, posing as a poor person with a child dying in the hospital and in desperate need of money, Agent Montez again approached Defendant. Defendant borrowed money from his employer and gave it to Agent Montez. Defendant further testified he refused the food stamps but did loan Agent Montez money to visit his sick child. A few months later, Agent Montez again met Defendant at the bar and related his child had died. According to Defendant, Agent Montez again asked to borrow money. Defendant said he again loaned Agent Montez money but did not receive any food stamps.

Agent Montez testified that Defendant purchased four booklets of food stamp coupons from him on April 30, 1993, and another four on October 26, 1993. Agent Montez denied ever telling Defendant he even had any children. Thus, it was his testimony that he sold Defendant a total of eight food stamp coupon booklets on two separate occasions and that each booklet was worth $65.

### A. Defendant Was Not Required to Admit Every Element of the Offense Before Being Entitled to an Entrapment Defense

Defendant requested the trial court to give an instruction on objective entrapment as suggested in *Sheetz,* 113 N.M. at 329, 825 P.2d at 619. The State argued that Defendant was not entitled to an entrapment instruction because he had not admitted the elements of the crime. The trial court agreed with the State and apparently did not distinguish between standards for objective and subjective entrapment.

The entrapment defense became clearly defined only in recent years; therefore, we must initially examine the contours of existing New Mexico entrapment precedent. New Mexico is one of a limited number of jurisdictions which recognize both the subjective and objective forms of the entrapment defense. *State v. Sellers,* 117 N.M. 644, 647, 875 P.2d 400, 403 (Ct.App.), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994); 3 Gene P. Schultz, *Proving Criminal Defenses* § 13.02[5][b] (1994). The subjective ap-

proach focuses on the state of mind of the accused, while the objective defense focuses on the conduct of law enforcement personnel. *Baca v. State*, 106 N.M. 338, 339, 742 P.2d 1043, 1044 (1987); Scott C. Paton, Note, *"The Government Made Me Do It": A Proposed Approach to Entrapment Under Jacobson v. United States*, 79 Cornell L.Rev. 995, 996 (1994).

▮ Objective entrapment is premised on the public policy against allowing the police to foster crime. *Baca*, 106 N.M. at 340, 742 P.2d at 1045. For this reason, "[t]he determination of the proper standards of police investigation is a question of law and policy to be decided by the courts in the first instance." *Sheetz*, 113 N.M. at 327, 825 P.2d at 617. However, those cases. which are appropriate to submit to the jury on the objective theory may also raise a jury issue under the subjective theory. Although it was not available at the time this case was tried, the new uniform jury instruction embodied in SCRA 1986, 14–5160 (Cum.Supp. 1995) appropriately provides guidance to juries on both theories. Instruction 14–5160 may be tailored to instruct a jury on either the objective or subjective entrapment defenses or on both if the evidence supports them both.

▮ With this background, we consider the district court's ruling that Defendant was not entitled to an entrapment instruction because he denied committing the offense. The inconsistent defense rule is generally not applied in jurisdictions using the objective test. Paul Marcus, *The Entrapment Defense* § 6.20, at 250 (1989). The incongruity of denying entrapment as a defense inconsistent with the objective theory was explained by California Chief Justice Traynor in the following terms:

A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt.... Entrapment is rec-

ognized as a defense because "the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime."

*People v. Perez*, 62 Cal.2d 769, 44 Cal.Rptr. 326, 329–30, 401 P.2d 934, 937–38 (1965) (en banc) (citations omitted); *see also* Thomas J. Raubach, Note, *Denial of the Crime and the Availability of the Entrapment Defense in the Federal Courts*, 22 B.C.L.Rev. 911–12 n. 22 (1981) (denial of the crime not relevant under objective approach because objective entrapment concerns only the nature of the government's actions and whether they were improper). Here, Defendant clearly was arguing for an instruction on objective entrapment and offered evidence in support of the instruction. The district court erred in refusing the instruction on the basis that Defendant did not admit the essential elements of the crime. *State v. Castrillo*, 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991) (defendant entitled to instruction on theory if supported by evidence). We thus remand for a new trial. Because the record may also support an instruction on subjective entrapment at the retrial, we turn now to an analysis of the inconsistent defense based on that theory.

At one time, it was generally accepted that if a defendant denied perpetrating a crime he could not alternatively rely on the subjective entrapment defense. *See* Timothy E. Travers, Annotation, *Availability in State Court of Defense of Entrapment Where Accused Denies Committing Acts Which Constitute Offense Charged*, 5 A.L.R.4th, 1128, 1131 (1981); *see also* John R. Call, Comment, *United States v. Demma: Assertion of Inconsistent Defenses in Entrapment Cases Allowed*, 1975 Utah L.Rev. 962, 964 (1975). This nearly monolithic approach has, however, eroded over time. Marcus, *supra*, § 6.18; 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.2, at 609 (1986). *See generally* Call, *supra*, at 963–64. In the federal courts, for example, at least four positions evolved ranging from a total ban on such inconsistent defenses to a blanket approval of an alternative entrapment defense. Raubach, *supra*, at 912–13.

■ The debate in the federal system was terminated with the decision in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). In that case, the defendant was an employee of the Small Business Administration (SBA). *Id.* at 60, 108 S.Ct. at 885. James DeShazer was the president of a company which participated in an SBA program. DeShazer believed his company was being denied SBA benefits because he refused to give the defendant the personal loan he repeatedly requested. Under FBI surveillance, DeShazer then gave the defendant a loan, and the defendant was immediately arrested and charged with accepting a bribe. The district court ruled entrapment was not available to the defendant because he denied the bribe and maintained that he had merely accepted a personal loan which was totally unrelated to his employment. *Id.* at 61, 108 S.Ct. at 885. The court of appeals affirmed the district court's ruling that a defendant who had not admitted all the elements of a crime could not advance an entrapment defense. *Id.* at 62, 108 S.Ct. at 886. The United States Supreme Court reversed and remanded, holding that, based on the evidence, the defendant was entitled to have the jury instructed on entrapment even though the defendant denied one or more elements of the crime. *Id.* However, since the Supreme Court holding in *Mathews* did not derive from Constitutional requirements, the holding is not legally binding on the states. *See State v. Soule*, 168 Ariz. 134, 135, 811 P.2d 1071, 1072 (1991) (en banc), *cert. denied*, 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed.2d 791 (1992); *People v. O'Toole*, 226 Ill.App.3d 974, 169 Ill.Dec. 31, 40, 590 N.E.2d 950, 959, *appeal denied*, 145 Ill.2d 641, 173 Ill.Dec. 11, 596 N.E.2d 635 (1992).

In the present appeal, the State relies on *State v. Rodriguez*, 107 N.M. 611, 616, 762 P.2d 898, 903 (Ct.App.), *cert. denied*, 107 N.M. 546, 761 P.2d 424 (1988), and argues that the defense of entrapment "is not available to a defendant who denies committing the offense, because its invocation necessarily assumes the commission of at least some elements of the offense." The State does, however, recognize that even prior to our recognition of the objective theory of entrapment in *Baca*, a defendant was entitled to an entrapment instruction if he "admitted some elements of an offense, although not all, and where the denial of the other elements [was] factually not repugnant to the defense of entrapment." *Martinez v. State*, 91 N.M. 747, 750, 580 P.2d 968, 971 (1978). The issue, then, becomes how much a defendant must admit to be entitled to rely on a subjective entrapment defense and whether Defendant Buendia met the test.

Defendant admitted some elements of the crime alleged. Indeed, he admitted he paid Agent Montez money on two occasions but maintained the payments were only loans for gas money so Agent Montez could visit his sick child and for funeral expenses. Thus, the present factual situation is analogous to *Mathews*, where the defendant accepted the money but argued it was a legitimate loan rather than an illegal bribe. Therefore, even though *Mathews* is not binding, it is persuasive in the present situation.

In line with *Mathews*, many state courts have concluded that if a defendant does not deny his presence entirely but only disputes the particulars of the crime or the intent, the entrapment defense should be submitted to the jury. *See, e.g., Medina v. State*, 634 So.2d 1149, 1151 (Fla.Dist.Ct.App.1994); *Strong v. State*, 591 N.E.2d 1048, 1051 (Ind. Ct.App.1992); *Commonwealth v. Tracey*, 416 Mass. 528, 624 N.E.2d 84, 88 (1993); *Daniels v. State*, 422 So.2d 289, 291 (Miss.1982); *State v. McBride*, 287 Or. 315, 599 P.2d 449, 451 (1979) (en banc). In fact, it can now generally be said that "[w]here the defendant admits the commission of the acts, but disputes the evidence as to intent, most courts do not apply the inconsistent defense doctrine; instead, they allow the entrapment question to go to the jury." Marcus, *supra*, § 6.23, at 261.

In addition to precedent from other jurisdictions, sound logic supports the allowance of the entrapment defense in circumstances such as those presented here. Roger D. Groot, *The Serpent Beguiled Me and I (Without Scienter) Did Eat—Denial of Crime and the Entrapment Defense*, 1973 U.Ill.L.F. 254, 267 (1973) (it is not inconsistent to deny a bribe but admit the payment

as a loan). In his concurrence in *Mathews*, Justice Scalia enunciated the basic rationale for allowing the defense in such a situation:

> The typical case presenting the issue before us here is one in which the defendant introduces evidence to the effect that he did not commit the unlawful acts, or did not commit them with the requisite unlawful intent, and also introduces evidence to show his lack of predisposition and inordinate government inducement. There is nothing inconsistent in these showings. The inconsistency alleged by the government is a purely formal one....

*Mathews*, 485 U.S. at 67, 108 S.Ct. at 889; *see also State v. Branam*, 161 N.J.Super. 53, 390 A.2d 1186, 1190 (App.Div.1978) (per curiam) (the inconsistency is illusory), *aff'd*, 79 N.J. 301, 399 A.2d 299 (1979).

Defendant did not request an instruction on subjective entrapment on the present record and the evidence may or may not support such an instruction at the retrial. Accordingly, we defer to the trial court to make the initial ruling, using this analysis, if a subjective entrapment instruction is requested.

### B. There Was Sufficient Evidence to Support Defendant's Convictions

■ Even though our holding on entrapment mandates a new trial, we must consider whether there is sufficient evidence to support a conviction because, if not, the charges must be dismissed and Defendant released. *State v. Lopez*, 109 N.M. 578, 582, 787 P.2d 1261, 1265 (Ct.App.1990) (if evidence not sufficient, defendant entitled to acquittal and retrial is barred).

■ Defendant was convicted of unlawful dealing in federal food coupons pursuant to Section 30–16–7. Under that statute, a defendant involved with dealing in coupons worth more than $250 but less than $2,500 is guilty of a fourth degree felony. Defendant argues on appeal that his convictions were not supported by sufficient evidence because the State failed to prove that the value of the food stamp coupons purchased by Defendant exceeded $250. We find sufficient evidence in the record from which a rational jury could have inferred that the value of the coupons in question was over $250.

The New Mexico food stamp program manager, Eugene Garcia, testified that none of his employees individually checks each food stamp coupon booklet to ensure that each and every coupon is actually contained in each individual booklet. However, he also said that in his extensive experience it is virtually unheard of for a food stamp recipient to return food stamp coupon booklets claiming coupons have been deleted.

Captain Carrasco of the Eddy County Sheriff's Department testified that he received a number of food stamp coupon booklets from the Office of the Inspector General for use in "Operation Badlands." Carasco testified that he checked some of the booklets on a random basis and determined that their stated face values correctly matched the actual denominations printed on the booklets. Carasco also confirmed that State's Exhibit 1, a sample booklet of federal food stamp coupons similar to the booklets used in "Operation Badlands," actually contained $65 worth of food stamp coupons as printed on the booklet cover. Special Agent Chris Najar testified that in the twelve similar undercover operations previously conducted by his office, he had never known a coupon to be missing from a food stamp booklet.

Undercover Agent Montez testified as to the specifics of the undercover purchases of food stamp coupon booklets by Defendant. He testified that on April 30, 1993, Defendant purchased four booklets of food stamp coupons from Montez, each booklet with a face value of $65. On October 26, 1993, Defendant again purchased four food stamp coupon booklets from Montez, and again each was worth $65.

There was sufficient evidence from which a rational jury could infer the food coupons had a value in excess of $250 and were purchased by Defendant. *Cf. State v. Haar*, 110 N.M. 517, 521, 797 P.2d 306, 310 (Ct.App.) (owner's testimony of value sufficient to allow jury to decide whether item was worth the statutory amount required for conviction), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990).

We reverse Defendant's conviction and remand for a new trial.

**IT IS SO ORDERED.**

HARTZ and BOSSON, JJ., concur.