IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-062

Filing Date: May 25, 2010

Docket No. 27,549

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

ROXANNA TOM,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**    Defendant Roxanna Tom filed a motion for rehearing and/or motion to amend or correct opinion. This Court has considered the motion and the motion is hereby denied as to rehearing and granted as to amending the opinion to state that we are addressing only two of the three issues Defendant raises on appeal. The opinion filed in this case on April 22, 2010, is withdrawn and the following opinion is substituted therefor.

**{2}** Defendant appeals her conviction for driving while under the influence of intoxicating liquor (DWI) pursuant to NMSA 1978, Section 66-8-102(A) (2005) (amended 2007 and 2008). We reverse Defendant's conviction and remand for a new trial.

## BACKGROUND

**{3}** After dinner with friends and family in Farmington, New Mexico, Defendant, along with some family members, went out for drinks and dancing at the Turnaround Bar (the Bar). Defendant drove to the Bar around 10:00 p.m. While at the Bar, Defendant split three pitchers of beer with three other people. At approximately 1:00 a.m., a fight broke out in the bar and Defendant and her companions decided to leave. Defendant testified that she was trying to extract one of her companions from the fray, when she was punched or hit with a bottle on the right side of her mouth, and that patrons in the Bar were throwing things at her and her companions as they fled the establishment. Defendant testified that she and her companions sought refuge in her vehicle. However, once in the vehicle, Defendant noticed someone approaching the car and, believing it to be the waitress who had struck her in the mouth and believing that the waitress had a bottle in her hand, Defendant started her car, "threw it in reverse," and "just took off." Defendant testified that she "[saw] that waitress running up, so when I pulled back and started going, [the waitress] was running up beside my car, and that's when I just heard a loud shatter on my windshield."

**{4}** Farmington police officers were dispatched to investigate the fight at the Bar. Once on the scene, a woman in the parking lot directed officers to Defendant's vehicle. As the officers approached Defendant's car, the vehicle was stationary. The officers were within five to ten feet of the car, with their flashlights illuminating the occupants' faces, and Officer Garcia gave a verbal command to the driver of the vehicle to stop. After Officer Garcia's command to stop, Defendant began backing out of the parking space. After Officer Garcia's second command to stop, Defendant proceeded to drive out of the parking lot toward the street. One of the officers was standing in the path of the car as it began accelerating, and the officer ordered Defendant to stop. Defendant continued to accelerate, and the officer was forced to move out of the way to avoid being hit. As the car passed, the officer struck the windshield of the car with his baton, causing the windshield to break.

**{5}** One of the officers followed Defendant as she exited the parking lot, engaged his lights and siren and stopped Defendant about a quarter of a mile from the Bar. Two other officers, Officer Bonnell and Officer Garcia, arrived at the scene and began a DWI and aggravated assault investigation. Officer Garcia asked Defendant if she was the driver of the vehicle and if she had consumed any alcohol. Defendant admitted to both. Officer Bonnell then administered at least two of the three standardized field sobriety tests (FSTs)—the walk-and-turn test and the one-leg-stand test. Officer Bonnell testified that he had to repeat the instructions for the walk-and-turn test several times before Defendant understood. According to Officer Bonnell, Defendant failed the walk-and-turn test by swaying throughout the test and executing an improper turn. Officer Bonnell also opined that Defendant failed the one-leg-stand test by swaying throughout the test, raising her hands more than six inches off her sides, and putting her foot down at least one time. Officer Bonnell further opined that Defendant was too impaired to drive safely. Defendant was

placed under arrest and transported to the police station where Officer Garcia administered a breath-alcohol test (BAT). Defendant's BAT results showed a .12 blood-alcohol content (BAC).

{6}  Defendant was charged with driving under the influence of intoxicating liquor or drugs, contrary to Section 66-8-102, and with aggravated assault on a peace officer with a deadly weapon, contrary to NMSA 1978, Section 30-22-22(A)(1) (1971). At trial, Defendant argued that the State had not demonstrated that she was impaired. Defendant further asserted that, if she was impaired, she did not intend to drive while impaired, but did so only because she feared immediate great bodily harm to herself and her companions. The jury convicted Defendant of DWI, but acquitted Defendant on the aggravated assault charge. Defendant appeals her DWI conviction.

**DISCUSSION**

{7}  Defendant raises three issues on appeal: (1) whether the district court erred in admitting the BAT results, (2) whether the prosecutor improperly commented on Defendant's duress defense during closing arguments, and (3) whether the district court erred by allowing officers who had destroyed their handwritten notes to testify. We address the first two issues only. Because we reverse and remand for other reasons, we see no need to address the third issue.

**I.      Admissibility of BAT Results**

{8}  Defendant contends that the district court erred by permitting the State to introduce Defendant's BAT results where the State failed to lay a proper foundation. Specifically, Defendant contends that the State failed to present evidence of the breath test machine's certification. The State argues that Defendant failed to preserve the specific argument she now advances on appeal regarding the machine's certification and the reliability of Defendant's BAT results. Alternatively, the State contends that it did establish the reliability of the BAT results, and any evidentiary error resulting from the admission of the BAT results was harmless.

**A.      Defendant's Argument That the State Failed to Lay a Proper Foundation Due to the Lack of Evidence of Certification Was Properly Preserved**

{9}  In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. In the present case, Defendant challenged the admissibility of the BAT results for lack of foundation. Defendant objected when the State sought to elicit testimony from a witness regarding the results of the BAT. In a bench conference following Defendant's objection, defense counsel specifically stated to the district court that "there is absolutely no testimony as to the reliability or the accuracy of the certification of the [breath test machine]." The district court allowed the State the opportunity to lay a foundation for the BAT results, and Defendant objected two more times on the same grounds prior to the admission of the BAT

results into evidence. After the district court overruled Defendant's multiple objections, defense counsel elicited testimony regarding the machine's certification on cross-examination, until the district court informed defense counsel that she was not permitted to pursue that line of questioning.

{10}    We conclude that Defendant preserved her argument for the purpose of appeal. Defendant alerted the district court as to the specific basis for her objection, the State was provided an opportunity to satisfy the foundational requirements for admission of the BAT results, and Defendant invoked multiple rulings from the district court on this ground. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127 (stating that the primary purposes for the preservation rule are "(1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue"), *cert. granted*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360. We therefore turn to the merits of Defendant's claim.

## B.      The District Court Erred in Admitting the BAT Results Without the Proper Foundation

{11}    Defendant contends that the district court abused its discretion by admitting Defendant's BAT results without a proper foundation, since there was no testimony as to the breath test machine's certification. We review the district court's admission or exclusion of evidence for abuse of discretion. *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. The district court abuses its discretion when it admits evidence for which the necessary foundation has not been laid. *State v. Gardner*, 1998-NMCA-160, ¶ 5, 126 N.M. 125, 967 P.2d 465. Under Rule 11-104(A) NMRA, the district court need only be satisfied that the foundational requirements for admission have been established by a preponderance of the evidence. *See State v. Martinez*, 2007-NMSC-025, ¶¶ 19, 23, 141 N.M. 713, 160 P.3d 894.

{12}    Compliance with accuracy-ensuring regulations of the Scientific Laboratory Division of the Department of Health (SLD) is a condition precedent to admission of BAT results. *See id.* ¶¶ 10-12; *Gardner*, 1998-NMCA-160, ¶ 11. Certification is an accuracy-ensuring regulation. *See Martinez*, 2007-NMSC-025, ¶¶ 11-12. Thus, before BAT results may be admitted, "the [prosecution] must . . . make a threshold showing that SLD certification was current at the time the test was taken." *Id.* ¶ 12; *see State v. Onsurez*, 2002-NMCA-082, ¶ 13, 132 N.M. 485, 51 P.3d 528 ("[I]n cases where the defendant properly preserves the objection, the [prosecution] must show that the machine used for administering a breath test has been certified by SLD."). "Moreover, as noted in *Onsurez*, because calibration is but a part of certification, the [prosecution] cannot substitute proof of calibration for proof of certification." *Martinez*, 2007-NMSC-025, ¶ 12.

{13}    In *Martinez*, our Supreme Court considered what evidence of certification the prosecution is required to present to establish a foundation for BAT results. *Id.* ¶ 10. The

Court held that the prosecution could satisfy the foundational requirement of demonstrating that the machine was certified through the testimony of the officer who performed the breath test that confirms the officer saw a certification "sticker" on the machine and that the certification was current. *Id.* ¶¶ 3, 23. In *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 20, 143 N.M. 455, 176 P.3d 1187 (filed 2007), this Court relied on *Martinez* to hold that where an "officer testified that, with respect to the breath machine she operated, she saw and checked the sticker on the machine," the district court could reasonably conclude that the officer testified to a current annual SLD certification, therefore satisfying the foundational requirement for admission of the BAT results.

{14}   In the present case, the State called the officer who performed the breath test as a witness. The State elicited testimony from the officer that he was certified to operate the machine, that a calibration check was performed immediately prior to administering the test to Defendant, and that he believed the machine to be functioning correctly when Defendant performed her breath test. The State did not, however, present any testimony regarding whether the officer observed evidence of SLD certification or whether that certification was current. Consequently, we conclude that the State failed to satisfy the foundational requirement of demonstrating that the machine was certified.

{15}   To the extent the State contends that, based on a preponderance of the evidence, the district court could have properly concluded that the State had laid the requisite foundation for admission of the BAT results, we disagree. The State's argument disregards our cases requiring that certification of the machine be established by a preponderance of the evidence. *See, e.g.*, *Granillo-Macias*, 2008-NMCA-021, ¶ 20 ("It is clear that the [prosecution] must make a threshold showing that the breath machine was SLD certified and that the certification was current at the time the test was taken."). To the extent the State would have this Court conclude that because arguably other evidence of the possible reliability of the evidence was presented the district court did not err in admitting the BAT results over Defendant's objection, we decline to do so. Our cases are clear that proof of certification is required and that proof of compliance with other parts of the regulations will not satisfy the certification requirement. *See, e.g.*, *Martinez*, 2007-NMSC-025, ¶ 12. We therefore conclude that the district court erred in admitting the BAT results.

## C.   The Admission of the BAT Results Was Not Harmless Error

{16}   Having concluded that the BAT results were erroneously admitted, we next determine whether the admission was harmless. *See State v. Barr*, 2009-NMSC-024, ¶ 47, 146 N.M. 301, 210 P.3d 198 ("Evidence admitted in violation of our rules is grounds for a new trial where the error was not harmless."). In making this determination, we apply a non-constitutional error standard. *See id.* ¶ 53 (stating that non-constitutional error review applies "where a defendant has established a violation of statutory law or court rules"). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." *Id.* ¶ 54; *see id.* ¶ 57 ("The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was

4

surely unattributable to the error." (omission in original) (internal quotation marks and citation omitted)).

**{17}** To determine whether an error was harmless, we consider whether there is "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence[,] (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule[,] and (3) no substantial conflicting evidence to discredit the [prosecution's] testimony." *Id.* ¶ 56 (footnote omitted). "No one factor is determinative; rather, they are considered in conjunction with one another. All three factors . . . provide . . . a reliable basis for determining whether an error is harmless." *State v. Marquez*, 2009-NMSC-055, ¶ 21, 147 N.M. 386, 223 P.3d 931 (omissions in original) (internal quotation marks and citation omitted).

**{18}** Our Supreme Court recently conducted a harmless error analysis involving the improper admission of scientific evidence in a DWI case. *See id.* ¶¶ 1, 13, 18. In *Marquez*, the defendant was convicted of DWI contrary to Section 66-8-102(A), or the "impaired to the slightest degree" portion of the DWI statute. *Marquez*, 2009-NMSC-055, ¶ 1. Percipient evidence was presented at trial that the officers observed the defendant leaving a bar; that the defendant was staggering and somewhat off-balance; that he almost collided with another vehicle in the parking lot and reversed into oncoming traffic on a dangerous street; that, once stopped, the defendant exhibited bloodshot, watery eyes and slurred speech, smelled of alcohol and admitted to drinking; that the defendant fumbled while searching for his documentation, had difficulty exiting his vehicle, failed to follow instructions, and exhibited a number of clues on each of the FSTs performed. *Id.* ¶¶ 2-6. At trial, one of the officers testified that, given the defendant's performance on the FSTs, there was a ninety-percent probability that the defendant was at or above the legal limit at the time of driving. *See id.* ¶ 8. The Court held that the prosecution had failed to lay a proper foundation for this expert testimony provided by the officer and that the testimony was improperly admitted. *See id.* ¶ 18. In analyzing whether the admission of the testimony requiring expertise was harmless error, the Court noted that "[i]n a DWI trial, the improper admission of scientific evidence indicating that [the d]efendant was legally intoxicated at the time of driving will almost certainly . . . tip the balance in favor of the State." *Id.* ¶ 23 (omission in original) (internal quotation marks and citation omitted). The Court concluded that, even though there was sufficient evidence to support the defendant's conviction without reference to the undisputedly inadmissible testimony, the improper admission of blood-alcohol evidence, along with the existence of a credibility issue, created a reasonable probability that the improper testimony impacted the jury's verdict. *See id.* ¶¶ 23-27. The Court therefore concluded that the error was not harmless. *Id.* ¶ 27.

**{19}** In the present case, there was sufficient evidence to support Defendant's conviction for DWI without reference to the improperly admitted evidence. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict."). The State presented evidence that Defendant smelled of alcohol, admitted to drinking, and failed the FSTs; that Defendant almost struck an officer with her car as she

drove out of the Bar's parking lot; and that she was hysterical during the roadside encounter. *See State v. Soto*, 2007-NMCA-077, ¶¶ 32-34, 142 N.M. 32, 162 P.3d 187 (holding that there was sufficient evidence of DWI under the impaired-to-the-slightest-degree standard even though the officers observed no irregular driving, the defendant's behavior was not irregular, he was cooperative, and no FSTs were conducted, given that the defendant "had red, bloodshot, and watery eyes, as well as slurred speech and a very strong odor of alcohol on his breath," the defendant admitted drinking, the officers observed several empty cans of beer where the defendant had been, and the officers testified that the defendant was intoxicated). Here, Defendant took the stand and provided testimony that contradicted testimony provided by the officers and that supported her duress defense. Defendant testified that she had been struck in the side of the mouth with what was possibly a bottle while she was in the Bar, that she had taken refuge in her car, that she did not see or hear any officers around her car or standing in front of her car, and that she was upset and in a lot of pain during the roadside encounter.

**{20 }**   Given our Supreme Court's ruling in *Marquez*, we conclude that based on the evidence presented by the State, the conflicting testimony offered by Defendant, and the nature of the evidence that was improperly admitted, the error committed by admission of a specific BAC score in this case was not harmless. Although we noted earlier in this opinion that even if we disregarded the BAT results, there was still sufficient evidence to support Defendant's conviction, the evidence in support of conviction is not so disproportionate that the improper evidence appears minuscule as a result. *See State v. Macias*, 2009-NMSC-028, ¶ 38, 146 N.M. 378, 210 P.3d 804 ("[I]n some circumstances where, in our judgment, the evidence of a defendant's guilt is sufficient even in the absence of the trial court's error, we may still be obliged to reverse the conviction if the jury's verdict appears to have been tainted by error[.]"). Moreover, the fact that the improper evidence was the only scientific evidence presented lends further support to our conclusion that the error presented in this case was not harmless. *See Gardner*, 1998-NMCA-160, ¶ 21 ("[W]hen the only scientific evidence presented at [a DWI] trial was admitted in error, the court cannot say that the effect is harmless.").

**{21}**   To the extent the State argues that Defendant's BAT results could not have contributed to her conviction because it was not relevant to any fact the jury was asked to decide, our Supreme Court rejected a similar argument in *Marquez*.[1] In *Marquez*, our Supreme Court held that, although "a defendant's BAC is not an essential element of the crime of DWI in violation of Section 66-8-102(A)[,] . . . it is common knowledge that an individual with a BAC at or above the legal limit is highly likely to be impaired by alcohol, at least to the slightest degree." 2009-NMSC-055, ¶ 24. Thus, the Court concluded that

---

[1]   We recognize that the State's argument is based on this Court's opinion in *State v. Marquez*, 2008-NMCA-133, 145 N.M. 31, 193 P.3d 578, *rev'd by Marquez*, 2009-NMSC-055. *See id.* ¶ 25 (holding that the officer's testimony correlating FST results and BAC "could not have contributed to [the d]efendant's conviction because it was not relevant to any fact the jury was asked to decide"). We note that the State's answer brief was filed before our Supreme Court's opinion rejecting this Court's harmless error analysis in *Marquez* was issued.

"[g]iven the explicit connection between BAC and physical or mental impairment," improperly admitted scientific testimony referring to a defendant's BAC created a reasonable probability that the jury was distracted "from its function of weighing the proper evidence of guilt [and] encourag[ed] a departure from the legitimate elements of proof." *Id.* (alterations in original) (internal quotation marks and citation omitted). We conclude the same is true in the present case. Furthermore, because we have concluded that sufficient evidence exists, we reverse Defendant's conviction and remand for a new trial. *See State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct. App. 1989) ("If all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred.").

## D.    Defendant Was Not Required to Challenge the Admissibility of the BAT Results in a Pretrial Motion

**{22}**    As indicated earlier in this opinion, Defendant challenged the admissibility of the BAT results for lack of foundation, including lack of evidence of SLD certification. The court permitted the State to attempt to lay a foundation, and Defendant continued her objections. When defense counsel attempted to cross-examine the State's witness as to certification, the court did not permit the questioning. The court indicated that it had informed an attorney in the public defender's office that the court wanted "to deal with it pretrial, so we don't get an ambush of the State" as to preparedness "to defend what the key operator is."

**{23}**    The State does not point out where in the record it complained at trial that it was ambushed or that it would have been able to prove SLD certification had it been forewarned of the need to do so. Nor does the State point out where it objected to defense counsel questioning the witness about certification on the ground that Defendant waived the right to object to the evidence because she did not move  before trial to suppress based on lack of SLD certification.

**{24}**    We discern no definitive ruling by the district court that Defendant was barred from objecting to evidence at trial because defense counsel violated a particular procedural rule or express order of the court related to this case. Further, on appeal the State does not argue that Defendant waived or was otherwise barred pursuant to any particular procedural rule or express court order from objecting at trial.

**{25}**    Rule 5-601(C)(2) NMRA requires that defenses and objections based on the initiation of the prosecution or on defects in the complaint, indictment, or information that are not jurisdictional be raised pretrial. This rule, however, does not include objections to the admission of evidence based on lack of foundation. The State has the burden to establish the necessary foundation for BAT results and, absent a definitive rule or appropriate pretrial court order, we will not "require the defense to file a pretrial motion simply to advise the prosecution that it may have a defect in its proof or some problem in establishing the appropriate evidentiary foundation." *State v. Cook*, 9 S.W.3d 98, 99-100, 102 (Tenn. 1999) (holding that "because the burden of establishing a foundation for the admissibility of a breath-alcohol test lies with the prosecution, a defendant may challenge its admissibility

either before or during the trial"). Accordingly, and based on the silence of the State in the district court on this issue, we hold that Defendant was not required to raise objections to the admissibility of BAT results for lack of foundation prior to trial.

## II. Prosecutorial Misconduct

{26}   Defendant contends that she was deprived of a fair and impartial trial when the prosecutor misstated the law in reference to Defendant's duress defense in the State's rebuttal closing argument. The prosecutor told the jury, "To put forward the defense of duress, as counsel has, [Defendant] admits to you that she was DWI." Because of the likelihood that Defendant will assert the same defense on retrial, which may invite a similar remark, we address this issue. Our analysis, however, is limited to whether the prosecutor misstated the law. *See State v. Taylor*, 104 N.M. 88, 96, 717 P.2d 64, 72 (Ct. App. 1986) ("Counsel may not misstate the law. The judge alone instructs the jury on the law, and where counsel attempts to instruct, he invades the province of the court." (citation omitted)). Because we are reversing and remanding for a new trial based on the admission of the BAT results, we do not determine whether the prosecutor's misstatement rises to the level of reversible error.

{27}   In analyzing whether the prosecutor misstated the law, we look to our cases involving duress and other justification defenses. In New Mexico, a duress defense typically consists of three elements: (1) the defendant committed the crime under threat, (2) the defendant feared immediate great bodily harm to herself or others if she failed to commit the crime, and (3) a reasonable person in the defendant's position would have acted the same way under the circumstances. *See State v. Duncan*, 111 N.M. 354, 355, 805 P.2d 621, 622 (1991); *see also* UJI 14-5130 NMRA. In *State v. Rios*, 1999-NMCA-069, ¶ 1, 127 N.M. 334, 980 P.2d 1068, this Court recognized duress as a valid defense to DWI. However, New Mexico law establishes a more narrow articulation of the defense in the strict liability context, requiring proof that: "(1) the defendant acted under unlawful and imminent threat of death or serious bodily injury, (2) he did not find himself in a position that compelled him to violate the law due to his own recklessness, (3) he had no reasonable legal alternative, and (4) his illegal conduct was directly caused by the threat of harm." *Id.* ¶ 25.

{28}   The prosecutor's statement in the present case raises the issue of whether a defendant asserting the defense of duress must admit to the criminal conduct alleged. The defense of duress "assumes that the defendant has voluntarily performed the criminal act." *Id.* ¶ 12 (internal quotation marks and citation omitted). However, we conclude that this does not preclude a defendant from asserting inconsistent defenses or still holding the prosecution to its burden of persuasion. *Cf. Martinez v. State*, 91 N.M. 747, 749, 580 P.2d 968, 970 (1978) (concluding "that the rule in favor of inconsistent defenses must extend to the defense of entrapment").

{29}   Although New Mexico courts have not dealt specifically with the issue of what admissions, if any, are required in order to assert the defense of duress, our courts have addressed this issue in the context of entrapment. "Those cases require [a] defendant to admit some elements of the offense before the defense of entrapment may be asserted." *Id*.

8

Admission to all of the elements of the criminal offense charged, however, is not required. As our Supreme Court explained in *Martinez*:

> [T]he federal Constitution requires proof beyond a reasonable doubt on each element of the crime. While entrapment is not a defense of constitutional dimension, requiring the defendant to forego proof beyond [a] reasonable doubt to assert entrapment relieves the [prosecution] of its constitutional burden and is tantamount to requiring him to plead guilty. Where the defenses are not mutually repugnant, this is asking too much.

*Id.* at 750, 580 P.2d at 971 (citations omitted). We see no reason to treat a defendant's right to assert the defense of duress any differently.

**{30}** We note that, in *Martinez*, the entrapment defense was raised because the defendant alleged that he only relented and secured a substance, which he did not believe to be heroin, after the undercover agent kept pressing the defendant for heroin and pretended to be very sick by feigning withdrawal symptoms. *Id.* at 748, 580 P.2d at 969. Our Supreme Court determined that a defendant had made sufficient admissions to entitle him to an entrapment instruction where the defendant, who was charged with trafficking heroin, admitted that he had an encounter with an undercover agent on the date alleged and that he did transfer a substance to that agent. *See id.* at 749-50, 580 P.2d at 970-71. Our Supreme Court determined that the defendant was still permitted to deny that he knew the substance that he transferred was heroin. *See id.*

**{31}** Similarly, in *State v. Buendia*, 121 N.M. 408, 912 P.2d 284 (Ct. App. 1996), this Court concluded that a defendant had made sufficient admissions for an entrapment instruction where the defendant, who was charged with unlawful dealing in federal coupons, admitted giving money to an undercover agent on two occasions but denied receiving food stamps in return. *See id.* at 409-10, 412, 912 P.2d at 285-86, 288. In *Buendia*, the entrapment defense was raised because the defendant alleged that he only gave money to the undercover agent because the agent told the defendant he needed it to visit his sick child. *See id.* at 410, 412, 912 P.2d at 286, 288. Thus, provided a defendant does not deny his presence entirely, but only disputes the particulars of the crime, the entrapment defense is available. *See id.* at 412, 912 P.2d at 288; *State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct. App. 1972) ("[W]hen the defense of alibi [is] offered during trial, the defense of entrapment is not available to a defendant who denies committing the offense, because to invoke entrapment necessarily assumes the commission of at least some of the elements of the offense."); *see also State v. Garcia*, 79 N.M. 367, 369-70, 443 P.2d 860, 862-63 (1968) (same).

**{32}** In the case at bar, Defendant admitted to having consumed alcohol and to being the driver of the vehicle. We conclude that, based on *Martinez* and *Buendia*, no further admissions by Defendant were necessary. Accordingly, we conclude that the prosecutor misstated the law in the State's rebuttal to closing arguments and that no requirement exists that a defendant admit to impairment in order to assert duress as a defense to a DWI charge.

9

**CONCLUSION**

**{33}**    We reverse Defendant's DWI conviction and remand for a new trial.

**{34}    IT IS SO ORDERED.**

_____
                        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Tom_, Docket No. 27,549**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-FE | Fundamental Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-RM | Remand |

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-AO | Assault or Battery on a Peace Officer |
| CL-DG | Driving While Intoxicated |
| CL-DS | Duress |

| **EV** | **EVIDENCE** |
|---|---|
| EV-AT | Authentication of Evidence |
| EV-BT | Blood/Breath Tests |