This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                               **NO. 29,187**

**GUADALUPE RODRIGUEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Defendant was charged with driving while under the influence of intoxicating liquor (DWI), reckless driving, and failure to yield to emergency vehicles. She was convicted of all the charges following a bench trial in metropolitan court (metro court). Defendant now appeals, raising issues related to the metro court's decision to admit the Scientific Laboratory Division (SLD) 705 form and the sufficiency of the evidence. We affirm.

**BACKGROUND**

The events which led to the charges against Defendant are undisputed. On August 4, 2006, Bernalillo County Sheriff's Deputy Greg Martinez was patrolling in a marked vehicle when he observed Defendant driving in excess of the speed limit. Defendant was traveling in the opposite direction of Deputy Martinez, so he waited for her to pass, turned his vehicle around, and began pursuit.

While attempting to catch up to Defendant, Deputy Martinez observed her travel through a stop sign without stopping or slowing down. When he finally caught up, Deputy Martinez activated his emergency equipment and, using his loud speaker, verbally directed Defendant to stop. Defendant did not stop, however, and Deputy Martinez concluded that a high speed pursuit posed too great a risk to the public. He deactivated his emergency equipment and backed away.

Deputy Martinez then observed Defendant travel at a high rate of speed through a construction zone in the opposing lane of traffic. At one point, Defendant swerved and grazed a jersey barrier with her tire. At this juncture, Deputy Martinez reactivated his emergency equipment and again attempted to compel Defendant to stop, but was again unsuccessful.

Defendant continued to speed while traveling in the opposing lane of traffic and drove through an intersection at high speed. Several other deputies had been alerted to the unfolding events and considered employing a spike belt. This became unnecessary, however, as Defendant eventually crashed into a newly installed, twelve-inch-tall curb and became airborne. This caused Deputy Martinez to crash into the rear of Defendant's vehicle. The wreck immobilized and significantly damaged Defendant's car and caused Deputy Martinez to suffer a shoulder injury.

Several deputies approached Defendant as she sat in her now inoperable car. Initially, she appeared to be unconscious but soon woke up. There were two empty beer cans on the passenger side of her car, and her vehicle smelled of alcohol. Deputy Ted Asbury took charge of the DWI investigation. He first spoke to Deputy Martinez and then made contact with Defendant.

Defendant informed Deputy Asbury that she had been driving home and had no recollection of the accident or how it occurred. Deputy Asbury smelled the odor

3

of alcohol emanating from Defendant's breath and observed that Defendant's eyes were blood shot and her speech was slurred. Deputy Asbury asked Defendant if she had consumed any alcohol, and she admitted that she had been drinking but could not recall how much. Defendant refused to perform the standard field sobriety tests and was taken to the University of New Mexico Hospital where she agreed to undergo a blood draw.

The results of that blood draw were recorded on a SLD 705 form, and that form was admitted at Defendant's trial over her objection. The form indicates that the blood alcohol content (BAC) of the blood drawn from Defendant was .07 gms/100ml. The analyst who tested Defendant's blood and transcribed the test results onto the 705 form did not testify. Rather, the State called Dr. Rong-Jen Hwang. Dr. Hwang testified that Defendant's BAC was .07 gms/100ml, as was indicated on the 705 form, and stated his opinion that Defendant's blood sample was analyzed correctly.

The metro court pointed to the following evidence in support of the DWI conviction on grounds of impairment to the slightest degree: the results of Defendant's blood test confirmed that she had consumed alcohol, Defendant admitted consuming alcohol, and Defendant drove "like a crazy person, putting everybody's life in danger." Defendant's refusal to perform the field sobriety tests was not used against her. The metro court concluded that there was no question Defendant drove recklessly

and failed to yield to emergency vehicles.

Defendant appealed the metro court's decision to district court. The district court affirmed the convictions. Defendant now appeals to us.

**DISCUSSION**

On appeal, Defendant makes three arguments. Citing the Confrontation Clause and recent New Mexico case law, she claims that the metro court committed fundamental error in admitting the 705 form because the analyst who actually tested her blood did not testify at trial. Alternatively, she claims that the 705 form was inadmissible because the State failed to lay an adequate foundation. Finally, she claims that there was insufficient evidence that she drove under the influence of alcohol. She asks us to reverse her convictions and either remand for a new trial or dismiss the charges with prejudice. We begin with the Confrontation Clause issue and address the remaining issues in the order listed.

Citing *State v. Aragon*, 2010-NMSC-008, 147 N.M. 474, 225 P.3d 1280 and *State v. Bullcoming*, 2010-NMSC-007, ¶ 16, 147 N.M. 487, 226 P.3d 1, *cert. granted*, *Bullcoming v. New Mexico*, 131 S. Ct. 62 (2010) (mem.), Defendant claims that she was entitled to confront and cross-examine the analyst who actually tested her blood and transcribed the test results onto the 705 form. Having been denied that opportunity, she contends that the report was wrongly admitted. "Confrontation

5

Clause claims are issues of law that we review de novo." *State v. Martinez*, 1996-NMCA-109, ¶ 14, 122 N.M. 476, 927 P.2d 31.

Defendant acknowledges that this issue was not raised at trial and concedes that the doctrine of fundamental error applies. Under that doctrine, we first determine if error occurred and then evaluate whether the error was fundamental. *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. In this case, we need not resolve whether admission of the 705 form was error; even if the form were admitted in error, we are confident that the error was not fundamental.

"A fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied [or when the district] court's error was of such magnitude that it affected the trial outcome." *State v. Dietrich*, 2009-NMCA-031, ¶ 52, 145 N.M. 733, 204 P.3d 748 (internal quotation marks and citation omitted). Thus, our Supreme Court has explained that "[t]he doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). Defendant's innocence is far from indisputable.

Ignoring the 705 form and the BAC results, there is ample other evidence

Defendant violated NMSA 1978, Section 66-8-102(A) (2005) (amended 2010) by driving under the influence of intoxicating liquors while impaired to the slightest degree. The uncontroverted evidence at trial demonstrates that Defendant exceeded the speed limit while traveling in an opposing lane of traffic, ignored stop signs and sped through an intersection, grazed a jersey barrier, ignored Deputy Martinez's repeated commands to stop, crashed her car into a large curb causing her vehicle to literally fly into the air, and caused a wreck which injured Deputy Martinez and significantly damaged Defendant's vehicle. After the wreck, officers observed open beer cans in Defendant's car and detected the odor of alcohol inside the vehicle. While speaking to Deputy Asbury, Defendant admitted that she had consumed alcohol before driving, and Deputy Asbury observed several signals confirming this admission: Defendant's breath smelled of alcohol, her eyes were bloodshot, and her speech was slurred. This evidence, standing alone, was more than adequate to convict Defendant of DWI under the impaired to the slightest degree standard. *See State v. Soto*, 2007-NMCA-077, ¶¶ 32-34, 142 N.M. 32, 162 P.3d 187 (concluding that there was sufficient evidence that the defendant committed DWI under the impaired to the slightest degree standard—despite the fact that officers observed no irregular driving, the defendant's behavior was not irregular, and no field sobriety tests were conducted—in light of the fact that the defendant's eyes were bloodshot, his speech

was slurred, his breath smelled of alcohol, he admitted drinking, and the officers observed several empty cans of beer where the defendant had been). "The record before us does not suggest the indisputable innocence of [Defendant], or that [her] conviction would shock the conscience." *Rodriguez*, 81 N.M. at 505, 469 P.2d at 150. Thus, even if the 705 form had been admitted in violation of Defendant's Confrontation Clause rights, that error was not fundamental. We proceed to the next issue on appeal.

Defendant next argues that the district court erred in admitting the 705 form because the State failed to lay an adequate foundation. "We review the district court's admission or exclusion of evidence for abuse of discretion. The district court abuses its discretion when it admits evidence for which the necessary foundation has not been laid." *State v. Tom*, 2010-NMCA-062, ¶ 11, 148 N.M. 348, 236 P.3d 660 (citations omitted).

Defendant's assertion that the State failed to lay an adequate foundation for admission of the 705 form is premised on two independent arguments. First, she argues that the State failed to submit any evidence demonstrating that the blood draw was carried out in compliance with the SLD regulations codified at 7.33.2.14 NMAC (4/30/2010). The State responds that Defendant did not make this argument at trial and, therefore, failed to preserve this contention. Our review of the record confirms

8

the State's position. As such, Defendant's first argument will not be addressed. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *State v. Balenquah*, 2009-NMCA-055, ¶ 18, 146 N.M. 267, 208 P.3d 912 (stating that "we do not consider arguments not preserved below").

Second, Defendant argues that the foundation was inadequate because there was a gap in the chain of custody. Specifically, she claims that there was a five-day period between the date her blood was drawn at the hospital and the date SLD received her blood. She asserts that the State was required, but failed to present, any evidence regarding what happened to the blood during that period. This claim was made below and shall be considered.

The evidence at trial indicated the following. Officer Asbury witnessed Defendant's blood being drawn at the hospital on August 4, 2006. He also witnessed the technician who drew Defendant's blood mark and seal the vials in which Defendant's blood was placed. Deputy Asbury then took command of those vials and logged them in at the blood locker at a substation. SLD received those vials on August 9, 2006, and, when they were received, the seals were still intact. The metro court determined that this evidence sufficiently established the chain of custody and rejected Defendant's claim that the alleged gap was significant. We see no error in

this ruling.

We have previously explained that

[i]n order to admit real or demonstrative evidence, the evidence must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered into evidence. The [s]tate is not required to establish the chain of custody in sufficient detail to exclude all possibility of tampering. Rather, there is no abuse of discretion when the preponderance of the evidence demonstrates that the questioned evidence is what it purports to be.

*State v. Rubio*, 2002-NMCA-007, ¶ 16, 131 N.M. 479, 39 P.3d 144 (internal quotation marks and citation omitted). Here, the State did prove by a preponderance of the evidence that the blood SLD tested was the blood drawn from Defendant. The blood vials were sealed at the time the blood was drawn from Defendant, Deputy Asbury took command of those vials and stored them in a secure location and, when the vials were delivered to the SLD, the seals were intact.

Even if we reached the opposite conclusion and determined that the foundation laid as to the 705 form was inadequate, we would nonetheless conclude that admission of the 705 form was harmless error. "Evidence admitted in violation of our rules is grounds for a new trial where the error was not harmless." *State v. Barr*, 2009-NMSC-024, ¶ 47, 146 N.M. 301, 210 P.3d 198. Defendant's arguments implicate the non-constitutional strand of the harmless error analysis. *Id.* ¶ 53 (stating that "where a defendant has established a violation of statutory law or court rules,

non-constitutional [harmless] error review is appropriate"). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the [fact finder's] verdict would have been different but for the error." *Id.* ¶ 54. To determine whether it is reasonably probable that the metro court's determination would have been different but for the error, we consider whether there is: "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id.* ¶ 56 (footnote omitted). "No one factor is determinative; rather, they are considered in conjunction with one another." *Id.* ¶ 55. We apply these factors.

Here, as previously described, there is substantial evidence apart from the 705 form and the BAC results to support Defendant's conviction for DWI. We decline to review that evidence again. As to the second factor, the 705 form and the results of Defendant's blood test appear minuscule in comparison to that other evidence. Finally, there was no conflicting evidence presented at Defendant's trial to discredit the State's evidence. Defendant acknowledges as much but points out that, at her arraignment, Defendant explained that the events of August 4, 2006 were attributable

11

to the fact that she was in a rush to get home to care for her ill mother. Defendant claims that this evidence contradicts the metro judge's determination that Defendant was impaired. We see no reason why we should consider statements made at an arraignment, *see In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that absent cited authority to support an argument, we assume no such authority exists), and further observe that it defies reason and sense to suggest that Defendant would drive in an outlandishly dangerous fashion, evade police, and inadvertently launch her vehicle skyward simply because she wished to hasten her return home.

Defendant claims that admission of the 705 form was not harmless error and relies heavily on *State v. Marquez*, 2009-NMSC-055, 147 N.M. 386, 223 P.3d 931 for this claim. We are unpersuaded and determine that *Marquez* is distinguishable.

As in the present matter, the defendant in *Marquez* was convicted of DWI under the impaired to the slightest degree standard. *Id.* ¶¶ 1, 16. At the defendant's trial, the arresting officer testified that he conducted field sobriety tests and further testified that the defendant's performance on those tests indicated a ninety percent likelihood that his BAC was at or above the legal limit. *Id.* ¶ 18. Our Supreme Court determined that this testimony was improperly admitted and then went on to assess whether admission of the testimony was harmless error. *Id.* ¶¶ 18-26.

The Court determined that factors two and three weighed against the conclusion that the error had been harmless. *Id.* ¶¶ 23-25. As to the second factor, the Court explained that the officer's improper statement was not minuscule in comparison to the other permissible evidence. *Id.* ¶ 23. This conclusion was premised on the fact that the officer's testimony essentially conveyed to the jury that it was scientifically provable, based on the results of the field sobriety tests, that the defendant was legally intoxicated. *Id.* Our Supreme Court determined that the nature of the officer's testimony had great potential to mislead. *Id.* As to the third factor, the Court observed that the defendant had proffered testimony that squarely conflicted with the State's evidence. *Id.* ¶ 25.

The concerns that motivated our Supreme Court to conclude in *Marquez* that the evidentiary error in that case was not harmless are not present here. Unlike the officer's testimony in *Marquez*, the 705 form could not have misled the fact finder to believe that it was nearly certain Defendant's BAC was at or above the legal limit. Indeed, the 705 form indicated that Defendant's BAC was below the per se limit. Thus, the 705 form could not have impacted the fact finder's judgment in the manner the officer's testimony in *Marquez* did. The 705 form and the BAC results are small in comparison to the other evidence presented. In addition, Defendant failed to submit evidence that conflicted or discredited the State's evidence. For these reasons, the

present matter is sufficiently distinguishable from *Marquez*. We proceed to the last issue on appeal.

Defendant contends that there was insufficient evidence presented that she drove under the influence of alcohol. Specifically, Defendant contends that the metro court "erred in ruling that there was a nexus between alcohol and impairment."

> When reviewing a verdict for sufficiency of the evidence, our role is to determine whether a rational fact[]finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused. When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the [s]tate has the burden of proof beyond a reasonable doubt. The court should not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact[]finder's view of the evidence with the appellate court's own view of the evidence.

*State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 (citations omitted).

Defendant's argument that there was insufficient evidence to prove a nexus between Defendant's driving and impairment ignores Dr. Hwang's testimony. As Defendant observes, Dr. Hwang testified that alcohol consumption can diminish a person's coordination and ability to operate a motor vehicle. It is clear that the metro court, as fact finder, believed that Defendant's consumption of alcohol had just this effect. Thus, there was sufficient evidence to allow the court to conclude that Defendant consumed alcohol, her consumption of alcohol caused her to be impaired, and her impairment resulted in her dangerous and unpredictable driving. We see no

14

sufficiency issue. Defendant emphasizes Dr. Hwang's testimony that alcohol affects different people in markedly different ways. While Dr. Hwang did provide this testimony, it does not change our conclusion that there was sufficient evidence to support the district court's determination that Defendant's consumption of alcohol caused her impaired driving.

**CONCLUSION**

For the foregoing reasons, Defendant's convictions are affirmed.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**I CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

**RODERICK T. KENNEDY, Judge (concurring in result only)**

15

**KENNEDY, Judge (concurring in result only)**

I concur in affirming the conviction and that the most salient objections to the admission of Form 705 were either not raised (confrontation) or resulted in harmless error when placed against the remainder of evidence in the case. I write separately to state that, in my view, the foundation for the admission of Form 705 was insufficient, and the form should never have been admitted when based on testimony such as was presented through Dr. Hwang. The four days of lag time in getting the blood to SLD and its delivery by the unidentified "L.C." impugns the authenticity and chain of custody but, Form 705 as admitted contains much more information. It indicates that the "blood alcohol content (BAC) of the blood drawn from Defendant was .07gms/100ml." [Majority Opinion page 4, lines 11-13] It is the only evidence of the actual alcohol content of Defendant's blood. The trial judge mentioned Dr. Hwang's testimony as to the test result as showing Defendant had alcohol in her system. It is with Dr. Hwang's testimony that the inadmissible contents of the form are made manifest.

The State qualified and presented Dr. Hwang's "expert" testimony after eliciting a string of qualifications and certifications for himself and SLD. None have a thing to do with the testimony about Form 705, which states that blood was taken and transported, a test was performed, and a test result was obtained. Dr. Hwang was

16

specific that he had not had any contact whatsoever with the blood or the test in this case. He stated that he could not vouch for the quality of the blood or the authenticity of the blood kit. He testified that his analysts are all well trained and that he "did not see any irregularities" in the procedures used from Form 705. The sole fact to which he testified, in essence, is that he had a personal belief that the test was performed correctly from the "business record" before him. With a nod to Carl Sagan, the absence of evidence concerning "irregularities" is not evidence of their absence. Expert testimony must be worth more than being an expert on reading and communicating confirmatory appearances from a piece of paper without committing to giving relevant evidence to the case at hand. As a result, we do not know *that in this case* the analyst correctly employed accepted methods and obtained a valid result.

Recent confrontation clause jurisprudence in this area makes clear that the reason analysts are required to personally testify to the work they perform is that, on occasion, they make mistakes that are consequential to the fundamental rights of the accused. I am convinced that a real examination of evidence is the disinfectant for the persistent questions that arise when supposition and third-hand testimony are allowed to establish the "science" used to establish a conclusive element of a defendant's guilt. Recent cases make apparent the need for judges to critically evaluate evidence presented in the guise of scientific or technical evidence. The touchstones and

17

signposts in cases and other literature available to trial judges amply instruct on how to employ a correct quantum of skepticism and critical thinking when presented with questionable evidence couched in high-sounding scientific jargon and bureaucratic regularity. There is a mountain of information available to attorneys as to how an adequate foundation for this evidence can properly be laid, as well as how to attack it.

However, even ignoring evidence of and from Form 705, I yield to the incredibly bad driving and supportive, if equivocal, symptoms given us by Defendant's conduct and agree that a rational finder of fact could find the evidence sufficient to convict. I therefore agree that Defendant's conviction should be affirmed.

_____

**RODERICK T. KENNEDY, Judge**