This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.             **NO. 31,853**

**HENRY MENDOZA**,

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant, Henry Mendoza, appeals from his convictions for trafficking cocaine by distribution and conspiracy to commit trafficking cocaine by distribution. He contends the district court erred by allowing the State to impeach him with evidence of a prior conviction and by refusing to instruct the jury on the defense of entrapment. He also contends there was insufficient evidence to support his convictions. We affirm.

## I.    BACKGROUND

**{2}** On April 16, 2009, Defendant was involved in a controlled purchase of crack cocaine. He was indicted on two counts: (1) trafficking (by distribution) (cocaine) and (2) conspiracy to commit trafficking (by distribution) (cocaine). A jury trial began on June 28, 2011. The State presented the following evidence at trial.

**{3}** Prior to encountering Defendant, police received a voicemail message on a tip line stating, "If you call this number, ask for Flaco. He will sell you crack cocaine." Detective Ryan Brown telephoned Flaco and arranged to purchase two ounces of crack cocaine. Detective Brown also arranged to meet Flaco at the General Mills parking lot in Albuquerque at 3:30 p.m. that same day. Flaco stated he was going to be driving a white car. Police arrived early to set up surveillance in the General Mills parking lot.

**{4}** A white Buick arrived at the designated time. The vehicle had two

occupants—a driver and a front-seat passenger. Detective Brown approached the vehicle from the passenger side, "spoke to both individuals," and ascertained "[t]hey knew about the deal and they knew what I wanted." The conversation "seemed to kind of go through [the passenger,]" later identified to be Defendant. Detective Brown explained that "whenever I would ask a question, [Defendant] would lean over and talk to the driver, and I wouldn't hear everything that was being said, but there was some kind of dialogue there."

{5}     The driver and Defendant told Detective Brown that they did not have the crack cocaine with them, but "they could go somewhere and get it." They asked Detective Brown to follow them in his vehicle to a different location. Detective Brown considered this to be "quite suspicious" and was not comfortable following them given his "fear of being robbed." Detective Brown asked if he could have a "small amount" of cocaine to "check it out" and "see if it's good[.]" An agreement was reached wherein Detective Brown would purchase $20 worth of crack cocaine. The driver handed the cocaine to Defendant, who handed it to Detective Brown. Detective Brown then paid $20 to Defendant, who handed it to the driver. Detective Brown testified that in his law enforcement experience, he often encountered individuals working together to sell narcotics. The prosecutor asked Detective Brown whether this case was consistent with such instances and he responded, "Yes, nothing struck

me as odd with this case."

{6} After receiving the cocaine from the passenger, Detective Brown gave the prearranged arrest signal, indicating a drug deal had taken place. At that point, additional officers approached and placed the driver, Darrell Purvis, and the passenger, Defendant, under arrest. Detective David Saladin testified regarding the contents of post-arrest interviews he conducted with Defendant and Purvis. Defendant admitted that he and Purvis were there to sell crack cocaine to Detective Brown. Purvis maintained that he and Defendant did not have access to two ounces of cocaine, but intended to "rip" Detective Brown. Detective Saladin testified that the term "rip" meant Purvis and Defendant intended to rob Detective Brown. Both Defendant and Purvis acknowledged using the name "Flaco." Detective Saladin testified that although he recorded his interviews with Defendant and Purvis, the recordings were lost prior to trial when the police department transitioned to a new computer system. At trial, Detective Saladin acknowledged his mistake in failing to copy and log the interviews into evidence.

{7} After the State rested its case, Defendant made a motion in limine to prevent the State from cross-examining him regarding his four prior convictions. The district court ruled that the State could cross-examine Defendant regarding the fact that he was a convicted felon based on a 2005 federal conviction, without identifying the

crime for which he was convicted. The State conceded and the district court disallowed cross-examination of Defendant regarding two additional prior felony convictions, including one in 1997 in Arizona, because each was in excess of ten years old.

{8}     During his direct examination, Defendant admitted to having a felony conviction from 2005. With regard to the events of April 16, 2009, Defendant explained that he saw Purvis after applying for a job at Wal-Mart. Purvis told Defendant he was going to pick up a friend at "the cereal place"—meaning the General Mills factory. Defendant stated that he accepted a ride from Purvis in lieu of taking the bus, planning to apply for a job at the General Mills factory. Defendant insisted he "never knew [Purvis] was going to do anything." Defendant denied handling either the drugs or the money, and explained that Detective Brown "hand[ed] the drugs to [Purvis], because [Purvis] has a long reach." Defendant testified that he "was going to leave" when Purvis "started talking about this transaction and all this stuff" but "[i]t just happened so fast." Defendant said that he did not know that Purvis was selling crack cocaine because he "wasn't paying attention" and he just "thought they were shaking hands." Defendant testified that he told the officers, "I ain't involved in this."

{9}     On cross-examination, the prosecutor questioned Defendant regarding the

length of time he had lived in Albuquerque. Defendant answered, "I came here when I was 19, so I'm 34 now." Defendant agreed with the prosecutor that he had been in Albuquerque for "[a]bout [fifteen] years," which would mean that he arrived in Albuquerque in 1996. At that point, the prosecutor notified the district court in a bench conference that he wished to use the fact of Defendant's previously excluded 1997 conviction to impeach Defendant's credibility because Defendant was incarcerated in Arizona during 1997 and 1998, and thus could not have then been in Albuquerque. The district court allowed use of the date of Defendant's conviction and ensuing time in jail only "to identify the fact that he couldn't have been in Albuquerque during the times that he's testified that he's been here" without identifying the nature of the conviction.

{10} The prosecutor then reviewed with Defendant his prior testimony regarding his tenure as an Albuquerque resident, then asked him whether he was in fact incarcerated in Arizona in 1997. Defendant said, "I think I was, yes, I was." Following a second bench conference, the following exchange took place between the prosecutor and Defendant:

Q: [Defendant], how do you explain that you were in Albuquerque and also incarcerated in Arizona at the same time?

A: How?

Q: How?

A: Well, I figure, by counting the days back—and sometimes you forget, you know what I mean? You try to leave the past way back. And I come to another place where nobody knows nothing about me so I can better myself so I won't be in trouble. That's the only reason why I came here.

{11} After the defense rested its case, Defendant requested that the jury be instructed on the defense of entrapment. The district court denied the requested instruction. The jury found Defendant guilty of both counts. The district court imposed a sentence of ten years imprisonment, suspending half. The sentence included a one-year habitual offender enhancement.

## II. DISCUSSION

{12} Defendant contends the district court erred by allowing the State to impeach him on cross-examination with evidence of his 1997 conviction and by refusing to instruct the jury on the defense of entrapment. Defendant also contends there was insufficient evidence to support his convictions. We review each issue in turn.

## A. Evidence of Prior Conviction

{13} Defendant first argues that the district court erred by allowing the State to impeach him on cross-examination regarding the fact of his 1997 conviction and ensuing incarceration. We review the district court's decision for an abuse of discretion. *See State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d

7

722. "We would find an abuse of discretion when the trial judge's action was obviously erroneous, arbitrary[,] and unwarranted. Abuse of discretion has also been defined as being clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citations omitted).

**{14}** The district court permitted the State to question Defendant regarding the 1997 conviction based upon its capacity to impeach Defendant's testimony that he arrived in Albuquerque in 1996. Defendant argues that this evidence should have been excluded pursuant to Rule 11-609(B) NMRA (2008, prior to 2012 amendment) because more than ten years had elapsed since Defendant was released from the confinement imposed by the conviction. *See id.* ("Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.")

**{15}** The State concedes that it could not cross-examine Defendant about his incarceration for the 1997 conviction under Rule 11-609, but contends that it could impeach Defendant with the fact of the conviction under Rule 11-608(B) NMRA. Prior to the 2012 amendment, Rule 11-608(B) stated, in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting a witness's character for truthfulness, *other than conviction of crime as provided in Rule 11-609*, may not be proved by extrinsic evidence.

8

> They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness's character for truthfulness or untruthfulness[.]

(Emphasis added.)

**{16}** By its language, Rule 11-608(B) specifically excludes prior convictions from its scope. The admissibility of prior convictions is governed by Rule 11-609, which establishes a bright-line, ten-year limitation on the use of prior convictions. *See* Rule 11-609 comm. cmt. (noting the New Mexico rule differs from the federal rule in providing an "absolute [ten]-year limit on the use of . . . prior conviction[s]"). Consistent with Rules 11-608 and 11-609, we conclude that the district court erred in allowing the State to cross-examine Defendant about his 1997 conviction.

**{17}** Yet our conclusion in this regard does not end our inquiry on appeal. As the error is not of constitutional dimension, we review it for harmlessness. Violations of court rules are assessed pursuant to a non-constitutional error analysis. *See State v. Guerra*, 2012-NMSC-027, ¶ 19, 284 P.3d 1076 ("Non-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." (alteration, internal quotation marks, and citation omitted)). "In the final analysis, determining whether an error was harmless requires reviewing the error itself and its role in the trial proceedings, and in light of

9

those facts, making an educated inference about how that error was received by the jury." *State v. Tollardo*, 2012-NMSC-008, ¶ 57, 275 P.3d 110. Evidence of a defendant's guilt cannot be the "singular focus" of the analysis, but "may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings[.]" *Id.* ¶ 43.

{18}     In the present case, we conclude that there is no reasonable probability that the jury's verdict would have been different if the State had not been allowed to cross-examine Defendant about his 1997 conviction. As an initial matter, we note that this information was cumulative. While improperly admitted evidence that is cumulative "is not *ipso facto* harmless beyond a reasonable doubt[,]" we conclude that it was harmless here. *See State v. Johnson*, 2004-NMSC-029, ¶ 37, 136 N.M. 348, 98 P.3d 998. The jury was already aware that Defendant had a prior felony conviction based on his testimony regarding his 2005 federal conviction, which he in part explained by agreeing with his attorney that Defendant was "not telling this jury [he is] some angel[.]" The fact that the jury learned about an additional conviction could not reasonably have affected its decision.

{19}     Additionally, we conclude that under the facts of this case evidence of Defendant's guilt was overwhelming and his explanation of the factual events was

implausible. The jury heard testimony about Defendant's direct involvement in the controlled purchase from two detectives. Detective Brown testified that Defendant "knew about the deal and . . . knew what I wanted." And Defendant and Purvis held private discussion during the immediate pendancy of the narcotic transaction, and both handled the crack cocaine and currency used to purchase it during the sale. As well, Detective Saladin testified that Defendant both acknowledged using the name "Flaco" and admitted that he and Purvis were there to sell cocaine to Detective Brown. The only evidence that Defendant presented to counter the State's evidence was his own testimony denying his involvement in the crimes. He professed to be a victim of circumstance, merely present in the car to avoid taking the bus and wholly unaware of what was happening around him. Given the nature of the transaction testified to, and in light of the additional evidence suggesting that Defendant and Purvis intended to rob Detective Brown, it was entirely reasonable for the jury to conclude that Defendant was not there by accident.

{20} In *State v. Duffy*, our Supreme Court held that the district court did not abuse its discretion in failing to declare a mistrial based on alleged prosecutorial misconduct of questioning a witness in such a way as to elicit information about a prior conviction of the defendant which would otherwise have been inadmissible. 1998-NMSC-014, ¶ 51, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-

NMSC-008. We noted that "any prejudice was mitigated by several factors" including, among other things, that the jury did not learn why the defendant was in prison and that the defendant's criminal record was not emphasized by the witness or the prosecution. *Id.* Similarly here, there are several factors mitigating any potential prejudice to Defendant. Notably, the nature of Defendant's prior conviction was never revealed and the exchange between the prosecutor and Defendant relating to the conviction was brief. As well, Defendant's status as a separately convicted felon was already properly known by the jury. In light of all of the evidence presented and considering the proceedings as a whole, we conclude that the district court's error was harmless.

**B.     Entrapment Instruction**

{21}     Defendant next argues that the district court erred in failing to instruct the jury on the defense of entrapment. Defendant tendered a written instruction to the district court pursuant to Rule 5-608(B) NMRA and argued the instruction was warranted because Detective Brown conducted the controlled purchase from the passenger side of the vehicle instead of the driver's side. The district court denied the requested instruction pursuant to *State v. Garcia*, 1968-NMSC-119, 79 N.M. 367, 443 P.2d 860, "as well as the totality of the evidence as presented in this case[.]"

{22}     As an initial matter, the State maintains that Defendant failed to preserve this

issue because the record proper does not contain Defendant's proffered instruction. Defendant counters that he in fact preserved the issue by providing the district court a copy of his requested instruction and including the language of the proffered instruction in his docketing statement and his reply brief.

{23}   "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted). We have allowed defendants to argue on appeal that the trial court erred in refusing to give a requested instruction where the defendants tendered a written instruction that included a misstatement of the law, as long as the trial judge was aware of the specific language proposed. *See State v. Badoni*, 2003-NMCA-009, ¶ 6, 133 N.M. 257, 62 P.3d 348 (collecting cases).

{24}   In this case, it is abundantly clear that Defendant proffered a written instruction on entrapment to the district court. Counsel and the district court engaged in an extensive colloquy about whether the instruction was warranted, alerting the district court to Defendant's theory of the case and the relevant law. Under these circumstances, we conclude Defendant adequately preserved this claim for our review and we thus turn to its merits.

**{25}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

> When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions. A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense.

*State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 (alteration, internal quotation marks, and citations omitted).

**{26}** Defendant requested that the jury be instructed on objective entrapment. In *State v. Vallejos*, our Supreme Court explained that objective entrapment, also referred to as entrapment as a matter of law, "has two distinct components, one factual and the other normative." 1997-NMSC-040, ¶ 10, 123 N.M. 739, 945 P.2d 957. "In the factual inquiry, the jury examines whether the police engaged in conduct creating a substantial risk that a person not predisposed to commit the crime would have been induced to commit it." *Id.* ¶ 12. "Under the normative inquiry, the trial court carefully scrutinizes both the methods and purposes of police conduct to determine whether police tactics offend our notions of fundamental fairness, or are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction[.]" *Id.* ¶ 16 (internal quotation marks and

14

citations omitted). The normative inquiry encompasses "two broad categories of [police] impropriety: unconscionable methods and illegitimate purposes." *Id.* ¶ 17.

{27} In the present case, Defendant argued in the district court that he was entitled to an entrapment instruction because Detective Brown acted with an illegitimate purpose to generate an arrest in approaching the vehicle from the passenger side. Defense counsel explained, "It's the illegitimate purpose entrapment." He did not argue that he was entitled to an entrapment instruction under the factual prong.

{28} In denying Defendant's requested instruction, the district court explained its ruling as follows:

> Pursuant to the holding in *State v. Garcia*, as well as the totality of the evidence as presented in this case, the court is going to deny [D]efendant's requested instruction, UJI 14-5161, based on the holding in *State v. Garcia* that entrapment is not available to [D]efendant as in a situation where [D]efendant has denied [his involvement]; secondly, the court does find that under the totality of the evidence presented as a matter of law, the alleged conduct would not be impermissible if it occurred.

While we disagree with the district court's conclusion that *Garcia* controls the result here, we agree with its conclusion that Defendant was not entitled to an entrapment instruction as a matter of law.

{29} In *Garcia*, our Supreme Court held that the defendant was not entitled to an

15

entrapment instruction where, among other things, the defendant offered an alibi at trial and "claim[ed] that he could not have been in the vicinity of the place of the alleged violation[—possession of marijuana]." 1968-NMSC-119, ¶ 9. The *Garcia* Court explained that "it is held by a number of highly-respected courts that the defense of entrapment is not available to a defendant who denies committing the offense, because to invoke entrapment necessarily assumes the commission of at least some of the elements of the offense." *Id.* (citing cases).

{30}     In *State v. Tom*, 2010-NMCA-062, ¶ 31, 148 N.M. 348, 236 P.3d 660, *overruled on other grounds by Tollardo*, 2012-NMSC-008, we cited *Garcia* for the proposition that "provided a defendant does not deny his presence entirely, but only disputes the particulars of the crime, the entrapment defense is available." Consistent with this interpretation of *Garcia*, our Supreme Court held in *Martinez v. State* that the defendant, who was charged with trafficking a controlled substance, was entitled to an entrapment instruction where he admitted that the encounter at issue occurred on the date the crime allegedly occurred and that he did transfer something to an undercover agent, but denied knowing or believing that what he transferred was heroin. *Martinez*, 1978-NMSC-051, ¶¶ 10-11, 91 N.M. 747, 580 P.2d 968. The *Martinez* Court explained:

> [W]here the defendant has admitted some elements of an
> offense, although not all, and where the denial of the other

16

elements is factually not repugnant to the defense of entrapment, the trial court must issue an instruction on entrapment. Whether or not the defenses are believable is for the trier of fact to determine, inasmuch as alternative defenses are allowed.

*Id.* ¶ 12. Similarly, in *State v. Buendia*, this Court concluded that a defendant who was charged with unlawful dealing in federal coupons had made sufficient admissions to warrant an entrapment instruction where he admitted giving money to an undercover agent but denied receiving food stamps in return. 1996-NMCA-027, ¶¶ 15-17, 121 N.M. 408, 912 P.2d 284.

{31} In the present case, Defendant's own actions demonstrate his awareness of and participation in the controlled purchase. As well, he does not deny that the controlled purchase took place. He claims, however, that he was not involved in the transaction and thought Detective Brown and Purvis were simply "shaking hands" when they were exchanging drugs and money. The jury was instructed that it could find Defendant guilty pursuant to an accessory theory even though Defendant did not do the acts constituting the crime, if the State proved the following elements beyond a reasonable doubt that:

1. Defendant intended that the crime be committed;

2. The crime was committed;

3. Defendant helped, encouraged or caused the crime to be committed.

Unlike the defendant in *Garcia*, Defendant admits that at least one of the elements of the offense occurred—he admits that the crime was committed. The fact that he disputes the particulars of the crime does not mean that he was not entitled to an entrapment instruction. Under these circumstances, we conclude that the district court erred in its reliance on *Garcia*.

{32} As with the district court's error with regard to violation of Rule 11-608(B), however, this finding does not end our inquiry. The district court also concluded that the entrapment instruction was not warranted because "under the totality of the evidence presented as a matter of law, the alleged [police] conduct would not [have been] impermissible if it [had] occurred." In *Vallejos*, our Supreme Court explained that "the normative inquiry [of objective entrapment] is most appropriately conducted by the court" although "the jury may resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired." 1997-NMSC-040, ¶ 20. We agree with the district court that even if the jury were to accept Defendant's version of the events, the conduct he described would not constitute objective entrapment.

{33} The *Vallejos* Court recognized as well that an "[i]llegitimate purpose" could be present when police have ensnared a defendant solely for the purpose of generating criminal charges and without any motive to prevent further crime or protect the public

at large." *Id.* ¶ 19 (internal quotation marks and citation omitted). Here, there is no evidence that Detective Brown approached the vehicle from the passenger side for the sole purpose of generating criminal charges against the passenger. On the contrary, the evidence reflects that Detective Brown believed both the driver and the passenger were to be involved in the drug transaction and approached the vehicle from the passenger side with a motive to prevent further crime and protect the public at large. Detective Brown testified that he had often run across individuals working together to sell narcotics and that "nothing struck [him] as odd with this case."

**{34}** The *Vallejos* Court also cautioned that the defense of objective entrapment is to be "used sparingly and reserved for only the most egregious circumstances[.]" *Id.* ¶ 22 (internal quotation marks and citation omitted). The district court correctly concluded that Defendant was not entitled to an entrapment instruction as a matter of law because the police conduct was not sufficiently egregious to constitute illegitimate purpose objective entrapment. We thus affirm the district court's decision denying the requested instruction.

## C.     Sufficiency of the Evidence

{35}     Defendant also argues that the evidence was insufficient to support his convictions, relying on *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1.  "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.  "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted).

{36}     With respect to both counts, the jury was instructed that it could find Defendant guilty pursuant to an accessory theory even if Defendant did not do the acts constituting the crime, if he intended that the crime be committed and helped, encouraged, or caused the crime to be committed.  At trial, Defendant denied ever admitting that he was involved in the cocaine deal and emphasizes that the recording of his alleged confession was lost prior to trial.  He notes that Detective Brown's police report does not discuss his actions, but only the actions of Purvis.  Defendant contends that the jury was required to acquit him because "the weight of the evidence

supports [his] version of events."

**{37}** We disagree. "[T]he jury is free to reject [a d]efendant's version of the facts, [and] contrary evidence supporting acquittal does not provide a basis for reversal." *Guerra*, 2012-NMSC-027, ¶ 27, 284 P.3d 1076 (alteration, internal quotation marks, and citation omitted). Viewing the evidence in the light most favorable to the State, we conclude that a rational jury could find the essential elements of the crimes charged beyond a reasonable doubt. Detectives Brown and Saladin testified that they arranged a controlled purchase of cocaine on April 16, 2009, met the vehicle in which Defendant was traveling at the assigned location, and purchased $20 worth of crack cocaine from Defendant and the driver of the vehicle, who were visibly working together to facilitate the sale. We conclude the evidence was sufficient to support Defendant's convictions.

**III.    CONCLUSION**

**{38}** Finding no reversible error, we affirm Defendant's convictions for trafficking cocaine by distribution and conspiracy to commit trafficking cocaine by distribution.

**{39}    IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

21

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**