2002-NMCA-007

39 P.3d 144

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ruben RUBIO, Defendant–Appellant.**

**No. 21,875.**

Court of Appeals of New Mexico.

Dec. 3, 2001.

Certiorari Denied, No. 27,272, Jan. 15, 2002.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Vicki W. Zelle, Lisa N. Cassidy, Assistant Appellate Defenders, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant, Ruben Rubio, appeals from his conviction for possession of cocaine. He argues that the trial court erred by denying his motion to suppress evidence obtained pursuant to a search warrant and his motion to suppress incriminating statements made to police while they were executing the search warrant. Additionally, Defendant claims that the trial court abused its discretion by admitting into evidence the cocaine found during the execution of the search warrant. We affirm.

*Facts*

{2} On January 11, 2000, Detective Daniel Carter of the Lea County Drug Task Force of the Hobbs Police Department prepared an affidavit for search warrant to search the home of Stephanie Sosa. The affidavit initially sets forth the place to be searched, the items sought to be seized, and the basis for the request. According to the affidavit, Detective Carter was contacted by Agent Darcy White of the New Mexico State Police. Agent White advised Detective Carter that she had been contacted by a "reliable" confidential informant who had provided information on at least two occasions in the past which led to the seizure of illegal narcotics. The affidavit states that the informant "is familiar with cocaine, it's [sic] use, packageing [sic], and methods of sale due to his/her past involvement with cocaine." It further states:

> The above informant contacted affiant on 1/11/2000. This informant advised they were at a house in the 400 block of W. Temple during the 48 hours preceeding [sic] this date. While at this house, the informant observed a spanish [sic] female known only as Stephanie in possession of a large quantity of cocaine. The informant provided a detailed description of the location of the cocaine and the package in which it is contained.
>
> While in this house, this informant did observe a[sic] unknown spanish [sic] male wearing white pants and a black shirt with a gun in the front of his pants. As the informant entered the house, this male reached for the gun but did not remove it from his pants.

{3} Based upon this information, the magistrate court issued a search warrant for Sosa's residence at 401 W. Temple in Hobbs. Detective Carter, along with eight other officers, executed the search warrant. Defendant and a woman were in the residence at the time the warrant was executed. Detective Carter testified that he gave Defendant the required warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to questioning him. During questioning, Defendant told Detective Carter that he lived at the house, that he had bought half an ounce of cocaine for $200 the previous week, that he had been using and selling that cocaine since then, and that there were no scales at the residence because Defendant would simply "eyeball" the amounts for sale. During the search of the residence, Sergeant Ken Ragland found four baggies of what appeared to be marijuana and one bag of a white powdery substance in the bathroom drawer.

*Sufficiency of the Affidavit*

{4} Defendant argues that the information contained in the affidavit for the search warrant did not provide probable cause for the issuance of a search warrant. In reviewing the sufficiency of an affidavit submitted in support of the issuance of a search warrant, we apply a de novo standard of review. *State v. Whitley*, 1999–NMCA–155, ¶ 3, 128 N.M. 403, 993 P.2d 117.

{5} Defendant does not argue that the information contained in the affidavit failed the *Aguilar–Spinelli* test for reliability as adopted in New Mexico by our Supreme Court in *State v. Cordova*, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989). *See also Spinelli v. United States*, 393 U.S. 410, 415, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 112–13, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Rather, Defendant argues that the information in the affidavit was stale and did not indicate that the cocaine would still be located in Sosa's residence when the search warrant was issued. When an affidavit for a search warrant does not contain sufficient information of ongoing criminal activity, there is no probable cause for the issuance of the search warrant. *Whitley*, 1999–NMCA–155, ¶ 3, 128 N.M. 403, 993 P.2d 117. Probable cause for the issuance of a search warrant must be established from within the four corners of the supporting affidavit. *State v. Pargas*, 1997–NMCA–110, ¶ 7, 124 N.M. 249, 948 P.2d 267. All direct and circumstantial evidence, as well as all reasonable inferences that can be drawn from those allegations, should be considered. *Id.*

{6} We addressed the staleness of information in an affidavit in support of a search

warrant in *Whitley* and *State v. Lovato*, 118 N.M. 155, 158, 879 P.2d 787, 790 (Ct.App. 1994). In *Whitley*, the affidavit indicated that the defendant had been seen selling marijuana from a motel room within the previous forty-eight hours. *Whitley*, 1999–NMCA–155, ¶ 2, 128 N.M. 403, 993 P.2d 117. We determined that the information in the affidavit was stale taking into account: (1) the time that had elapsed from when the marijuana was observed to the time that the warrant was issued, "[ (2) ] the character of the crime and the extent of prior activity, [ (3) ] the consumable or transferable nature of the items to be seized, [ (4) ] the information known about the suspect and his or her habits, and [ (5) ] the location to be searched." *Id.* ¶ 8. In making this determination, we noted the time that had elapsed since the sale was witnessed and the fact that the sale had occurred from a motel room, which, due to its transient nature, indicated that the drugs might not still be in the room. *Id.* ¶¶ 8, 9. In addition, we noted both the absence of facts indicating an ongoing operation and the highly consumable nature of marijuana. *Id.* ¶ 9.

{7} In *Lovato*, this Court concluded that there was insufficient evidence to establish probable cause to issue a search warrant when a confidential informant made a controlled purchase of heroin from a motel room within seventy-two hours. *Lovato*, 118 N.M. at 158, 879 P.2d at 790. The affidavit did not have any information concerning the amount of heroin involved in the sale and whether there was any additional heroin or illegal drugs in the motel room at the time of the sale or at any other time. *Id.* Additionally, the affidavit did not contain information about the identity of the person staying in the motel room, or any other information linking the defendant with the heroin. *Id.* We stated that:

> Although seventy-two hours is not necessarily an extensive amount of time between a reliable informant's observation and issuance of a search warrant, under the facts and circumstances of the instant case, the affidavit fails to support a conclusion that criminal activity at the motel

room was of an ongoing, continuous nature.

*Id.*

{8} Defendant correctly states that the question before this Court is whether, taking the circumstances of the case into account, the affidavit provided probable cause to indicate that the cocaine observed forty-eight hours earlier would still be at the residence. He argues that *Whitley* and *Lovato* are controlling and indicate that there was insufficient probable cause for the magistrate to issue a search warrant. Defendant contends that cocaine is highly consumable, making it less likely that it would still be present forty-eight hours after it was observed. However, the confidential informant told Agent White that there was a "large" quantity of cocaine in the residence. We recognize that the affidavit would be more persuasive if it also contained facts indicating the manner in which the cocaine was packaged as well as a more precise estimate of the amount of cocaine present. Nevertheless, all direct and circumstantial evidence, as well as all reasonable inferences that can be drawn from those allegations, should be considered. *Pargas*, 1997–NMCA–110, ¶ 7, 124 N.M. 249, 948 P.2d 267. It can be reasonably inferred from the testimony of a confidential informant who is familiar with cocaine and its use, packaging, and methods of sale, that the informant would be qualified to know what constituted a large amount of cocaine as opposed to an amount that could be rapidly consumed or sold. *See id.* Moreover, we view *Whitley* and *Lovato* differently because of the transitory nature of a motel room. *Whitley*, 1999–NMCA–155, ¶ 9, 128 N.M. 403, 993 P.2d 117; *Lovato*, 118 N.M. at 158, 879 P.2d at 790. Because a residence does not have the same transitory nature, the probability that the cocaine would continue to be there after a forty-eight hour period is greater.

{9} Further, a magistrate may make inferences from the behavior described in the affidavit. *State v. Duquette*, 2000–NMCA–006, ¶ 12, 128 N.M. 530, 994 P.2d 776. The confidential informant stated that the cocaine was guarded by a man with a gun. We do not agree with Defendant that the presence

of an armed man was merely an "innocent fact" under the facts and circumstances of this case. The magistrate could infer that the presence of an armed individual in the residence where the cocaine was located indicated that there was a large amount of cocaine present.

{10} Finally, although we agree with Defendant that there is no evidence in the affidavit setting forth any sales or pattern of sales of cocaine at the residence, such activity is only one factor to consider in determining whether there is probable cause to issue a search warrant. The confidential informant stated that there was a "large" amount of cocaine at a private residence guarded by a man with a gun within the previous forty-eight hours. The magistrate could reasonably infer from this information that the cocaine would still be at the residence at the time of the issuance of the search warrant.

*Waiver of Fifth Amendment Right to Remain Silent*

{11} Defendant argues that his statement to Detective Carter was not made after a knowing and voluntary waiver of Defendant's Fifth Amendment right to remain silent. According to Defendant, there were several officers at the small residence at the time he gave his statement, and no other officer heard Detective Carter read Defendant his rights pursuant to *Miranda*, 384 U.S. at 436, 86 S.Ct. 1602. In addition, Detective Carter did not have Defendant read or sign an advice of rights form and did not tape-record the questioning, contrary to the protocol of the Hobbs Police Department.

{12} The trial court's determination that Defendant agreed to waive his Fifth Amendment right to remain silent is a question of fact that we review for substantial evidence. *State v. Barrera*, 2001–NMSC–014, ¶ 23, 130 N.M. 227, 22 P.3d 1177. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661. Detective Carter testified that he gave *Miranda* warnings to both Defendant and Sosa prior to questioning. Despite contrary circumstantial indications, Detective Carter's testimony is substantial evidence upholding the trial court's determination that *Miranda* warnings were given to Defendant.

{13} We next address whether, under the circumstances, the trial court properly determined that Defendant's waiver of rights was voluntary. "In order for a defendant's waiver of *Miranda* rights to be constitutionally valid, the waiver must be knowingly and intelligently made." *State v. Fekete*, 120 N.M. 290, 301, 901 P.2d 708, 719 (1995). A waiver " 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception .... [and] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Id.* at 301, 901 P.2d at 719 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

{14} Defendant argues that under the circumstances as they existed at the time he gave his statement, it was not possible for Defendant to have knowingly and voluntarily waived his Fifth Amendment right to remain silent. Defendant gave his statement during the search of the residence by Detective Carter and eight other officers. We agree with Defendant that the benchmark of whether a *Miranda* waiver is valid is the absence of government coercion or overreaching. *State v. Pisio*, 119 N.M. 252, 257, 889 P.2d 860, 865 (Ct.App.1994). However, Defendant does not set forth evidence indicating coercion or overreaching by Detective Carter or the other officers. *Accord Barrera*, 2001–NMSC–014, ¶ 27, 130 N.M. 227, 22 P.3d 1177 (stating that when a defendant sets forth no evidence that police coerced or intimidated him into waiving *Miranda* rights, and there is no evidence that threats, promises, or physical force were used, there is no governmental coercion such that a waiver of rights is not voluntary). Detective Carter testified that he read Defendant his *Miranda* warnings and Defendant agreed to give a statement. Defendant has not provided evidence that he did not understand these warnings or that he did not agree to give a statement. We find no authority, and Defen-

dant cites none, holding that a waiver of Fifth Amendment rights is invalid solely because it is obtained during the execution of a search warrant or in the presence of several officers. *Accord State v. Martinez*, 1999–NMSC–018, ¶ 24, 127 N.M. 207, 979 P.2d 718 (no unduly coercive environment found where defendant was questioned in custodial surroundings with six officers present). The State has satisfied its burden of proving by a preponderance of the evidence that Defendant knowingly and voluntarily waived his Fifth Amendment right to remain silent.

**** {15} Although Defendant concentrates his argument on an invalid waiver of his Fifth Amendment rights, he also suggests that his statements were not voluntary for many of the same reasons. The prosecution has the burden of showing "the voluntariness of a defendant's statement by a preponderance of the evidence." *Id.* at 298, 901 P.2d at 716. On appeal, this Court reviews "the entire record and the circumstances under which the statement or confession was made in order to make an independent determination of whether a defendant's confession was voluntary." *Id.* In order to decide the ultimate question of voluntariness, we examine the totality of the circumstances surrounding the confession. *Id.* The same considerations that make Defendant's waiver of his rights voluntary show that his statements, too, were voluntary. In particular, there was no coercion, no intimidation, no promises, no threats, and no suggestions. In short, there was nothing to show that the statements were anything other than voluntary.

*Admission of Cocaine as Evidence*

**** {16} Defendant argues that the trial court abused its discretion by admitting the cocaine into evidence because the State failed to prove that the evidence was what the State claimed it to be by a preponderance of the evidence. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). In order to admit real or demonstrative evidence, "the evidence must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered

into evidence." *State v. Peters*, 1997–NMCA–084, ¶ 26, 123 N.M. 667, 944 P.2d 896. The State is not required to establish the chain of custody in sufficient detail to exclude all possibility of tampering. *Id.* Rather, there is no abuse of discretion when the preponderance of the evidence demonstrates that the questioned evidence is what it purports to be. *Id.*

**** {17} Defendant claims that the trial court abused its discretion because Forensic Chemist Heather Collins could not account for an approximate one gram discrepancy between the weight of the sample when weighed by Detective Durham and when later weighed by Collins. But such a discrepancy in the chain of custody relates to the strength of the evidence, rather than to its admissibility. *Id.*

{18} The chain of custody was adequately described in the trial testimony. Sergeant Ragland found the evidence and gave it to Detective Durham. Detective Durham field tested the evidence positive for cocaine, sealed it in an envelope, and maintained it in his presence until he placed it in the police department evidence locker. Prior to placing the cocaine into the evidence locker, Detective Durham weighed the bag containing the cocaine on uncertified scales to get an approximate weight. The weight was 6.8 grams. Detective Durham sealed the evidence and sent it to the Southern Crime Lab for analysis. Collins removed the evidence from the vault, removed the cocaine from its bag, and weighed it. It weighed 5.82 grams. Collins then performed the required tests on the cocaine which were positive. She replaced the cocaine into the evidence vault for return to the Hobbs Police Department.

{19} Furthermore, the discrepancy in the weight of the cocaine was adequately explained by the differing certification of the scales and the fact that the cocaine was weighed by Detective Durham while it was still in a bag and by Collins when it was out of the bag. The trial court did not abuse its discretion by admitting the cocaine into evidence.

*Conclusion*

{20} Based upon the foregoing, we affirm Defendant's conviction.

{21} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, and CYNTHIA A. FRY, Judge.