This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filed: November 7, 2013**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                       **NO. 33,290**

**MOISES MARTIN MENCHACA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Bennett J. Baur, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**CHÁVEZ, Justice.**

{1} Moises Menchaca appeals directly to this Court from a life sentence stemming from a conviction of first degree murder. Menchaca was convicted of one count of willful and deliberate murder contrary to NMSA 1978, Section 30-2-1(A)(1) (1994). Menchaca was also convicted of conspiracy to commit first degree murder, shooting at a dwelling or occupied building, aggravated battery, and aggravated assault with a deadly weapon. On appeal, Menchaca presents the following arguments: (1) the four-year delay in bringing him to trial violated his constitutional right to a speedy trial, (2) his trial counsel was ineffective for failing to assert his speedy trial right earlier in the proceeding and failing to properly impeach the two co-defendants, (3) the district court erred in admitting Menchaca's cell phone records, (4) the district court erred in not holding an evidentiary hearing on alleged prosecutorial misconduct, (5) a proper chain of custody was not established for the admission of Menchaca's red shirt and cell phone, and (6) his convictions were not supported by sufficient evidence. We reject each of Menchaca's arguments and affirm his convictions.

**FACTS**

{2} On the night of September 7, 2007, Menchaca went to a party with two of his friends, Benjamin Tapia and Isaac Ramirez. A fight broke out and the three friends

left after the host punched Menchaca in the face. They armed themselves and returned to the party. Menchaca opened fire on the house, killing one guest and injuring two others. Menchaca's case took almost four years to litigate. The facts are further developed in the appropriate sections of this decision.

**DISCUSSION**

**I.      MENCHACA'S SPEEDY TRIAL RIGHTS WERE NOT VIOLATED**

{3}      Menchaca argues that the forty-seven month pre-trial delay denied him his constitutional right to a speedy trial. U.S. Const. amend. VI; N.M. Const. art. II, § 14. According to Menchaca, the nearly four-year delay is presumptively prejudicial, and the reasons for the delay weigh against the State. Menchaca also argues that he sufficiently invoked his speedy trial rights by asserting them shortly before trial. Finally, Menchaca argues that he suffered actual prejudice from the delay because of the death of an exculpatory witness.

{4}      We evaluate speedy trial claims by balancing the factors articulated in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972): "(1) the length of the delay, (2) the reasons given for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (internal quotation marks and citation omitted). "On appeal, we give deference to the

[district] court's factual findings, but we review the weighing and the balancing [of] the *Barker* factors de novo." *Id.* (alterations in original) (internal quotation marks and citations omitted).

**A.    The length of delay was presumptively prejudicial**

{5}    Menchaca argues that the length of the delay in his case was presumptively prejudicial and should weigh in his favor. We agree. In *State v. Garza*, 2009-NMSC-038, ¶ 48, 146 N.M. 499, 212 P.3d 387, we issued guidelines for determining when a delay is presumptively prejudicial. Under the *Garza* guidelines, a delay of eighteen months is presumptively prejudicial for complex cases. *Id.*

{6}    That this case was complex is beyond dispute. Menchaca was charged with nine counts, including a capital offense; his case was joined with the cases of two co-defendants; the shooting involved multiple victims, requiring extensive forensic analysis; and the case involved more than eighty witnesses and 885 pages of written discovery. Under the *Garza* guidelines, a delay of eighteen months in complex cases such as this one is presumptively prejudicial. *Id.* Menchaca was arrested on September 8, 2007, and trial commenced on August 5, 2011, constituting a delay of forty-seven months. Therefore, Menchaca's trial delay was presumptively prejudicial.

{7}    However, length of delay alone is not dispositive. *Barker* presents a balancing

4

test, and no one factor alone is sufficient to find a violation of the right. *See Garza*, 2009-NMSC-038, ¶ 23. "[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors." *Id.* ¶ 21. Thus, finding Menchaca's delay presumptively prejudicial does not end the inquiry into whether his speedy trial rights were violated; instead, we balance the other *Barker* factors.

**B.      The reasons for delay do not weigh heavily against the State**

{8}      We examine the second *Barker* factor by "allocating the reasons for the delay to each side and determining the weight attributable to each reason." *State v. Tortolito*, 1997-NMCA-128, ¶ 8, 124 N.M. 368, 950 P.2d 811. There are three types of delay, each of which carries a different weight. *Garza*, 2009-NMSC-038, ¶ 25 (citing *Barker*, 407 U.S. at 531). First, prosecutorial "'bad faith in causing delay will be weighed heavily against the government.'" *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992) (citation omitted)). Second, negligent or administrative delay weighs less heavily against the government. *Id.* ¶ 26. Finally, delays for "'a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *Id.* ¶ 27 (quoting *Barker*, 407 U.S. at 531).

**1.      *Delay attributable to Menchaca***

5

**{9}** Menchaca caused or contributed to delay throughout this case. As a preliminary matter, Menchaca declined a public defender and failed to retain private counsel for nearly three months. Menchaca then caused delay by filing a joint motion to continue on July 1, 2009, which the district court granted, giving the parties a six-month extension. We also attribute the December 29, 2009 stipulated order to Menchaca because the continuance was requested jointly by all of the parties.[1] The continuance resulted in resetting the trial from January 19, 2010 to July 12, 2010, a delay of approximately six months. Finally, Menchaca caused a two-week delay by excusing Judge Schultz in February 2011.

**{10}** "[D]elay occasioned by the accused will weigh heavily against him." *State v. Harvey*, 1973-NMCA-080, ¶ 7, 85 N.M. 214, 510 P.2d 1085. We find a total of one year and three months of delay attributable to Menchaca. This delay weighs heavily

---

[1]Although Menchaca now argues that he did not have notice of the stipulated order, we attribute the stipulated order to Menchaca for several reasons. First, the grounds for the order included providing more time for Menchaca to schedule witness interviews and allowing counsel for co-defendant Ramirez to conduct a death penalty trial. The stipulated order was sought by defense counsel to benefit the defense, so we do not attribute the delay to the State. Second, the record reflects three unsuccessful attempts to contact Menchaca's counsel regarding the order, so it is plausible that Menchaca did not have notice of the order. However, if he were truly surprised by the stipulated order and did not wish to stipulate, he could have objected. He did not object; thus, we attribute the stipulated order and resulting delay to Menchaca.

6

against him.

**2.      *Delay attributable to the State***

{11}     The State bears the burden of moving the case forward.  *See Barker*, 407 U.S. at 527 (noting that "[a] defendant has no duty to bring himself to trial; the State has that duty. . . ." (footnote omitted).  Therefore, even administrative or negligent delay will be attributed to the State and weighed against the State, although not as heavily as intentional efforts to harm the defense through delay.  *Garza*, 2009-NMSC-038, ¶ 26.  In this case, there is no evidence of intentional delay.  The delay attributable to the State is administrative or negligent.

{12}     Judicial reassignments "fall[] within the administrative burdens on the criminal justice system," and delay resulting from judicial reassignments is "considered negligent delay and is weighed against the State accordingly."  *Id.* ¶ 29.  The delay caused by the trial resetting pending Judge Bridgforth's retirement is negligent delay which weighs against the State.  The State caused additional delay by excusing Judge Murphy.  Approximately two months elapsed between the reassignment to Judge Murphy and the notice of assignment to Judge Schultz.  Therefore, approximately two months of administrative delay caused by judicial reassignments weighs against the State.

7

**{13}** The remainder of the delay was caused by continuances. As discussed above, we do not attribute to the State those continuances that were sought by the defense. Menchaca concedes that he consented to or did not object to the State's continuances. The record shows that he either stipulated, took no position, or failed to object to each continuance. Menchaca first stipulated to a motion for continuance on March 17, 2008, which the State requested due to the large volume of discovery and the lack of forensic testing results available at the time. The district court granted the continuance and extended the time limit for six months. This delay was for a valid reason, and it does not weigh against the State.

**{14}** Menchaca took no position on the State's September 25, 2008 petition to this Court for a six-month extension of time to commence trial, which this Court granted. Menchaca stipulated to the State's March 13, 2009 petition to this Court for an additional six-month extension of time to commence trial. Menchaca stipulated to yet another extension of time on September 30, 2009, in the State's second petition to the district court for extension of time within which to commence trial. The district court granted the motion and extended the time limits by six months to April 1, 2010. On March 30, 2010, Menchaca took no position on the State's petition to the district court for another six-month extension, which the district court granted. Thus, Menchaca

8

consented to four extensions, resulting in a delay of two years. Since Menchaca consented to the continuances, the resulting delay weighs only slightly against the State.

{15} Of the nearly four-year delay, six months of delay was for a valid reason and does not weigh against the State. Two months of administrative delay weigh against the State. Two years of additional neutral delay weighs against the State, but only slightly, because Menchaca consented to it. On the other hand, one year and three months of delay weighs heavily against Menchaca. Therefore, the second *Barker* factor weighs slightly against the State.

**C.     Menchaca did not meaningfully assert his right to a speedy trial**

{16} "The defendant's assertion of his [or her] speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531-32. Although a defendant's failure to assert the right does not necessarily constitute waiver, "the timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his [or her] objection or whether the issue was raised on appeal as afterthought."

*Garza*, 2009-NMSC-038, ¶ 32. As the court noted in *Barker*, defendants may choose not to assert the right to speedy trial because "deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic." 407 U.S. at 521.

{17} Under the third *Barker* factor, we examine both the timing and the manner of the defendant's assertion of the speedy trial right. *Garza*, 2009-NMSC-038, ¶ 32 (citing *State v. Maddox*, 2008-NMSC-062, ¶ 28, 145 N.M. 242, 195 P.3d 1254, *abrogation recognized by State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272). "An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution." *Zurla v. State*, 1990-NMSC-011, ¶ 19, 109 N.M. 640, 789 P.2d 588, *modified on other grounds by Garza*, 2009-NMSC-038, ¶¶ 21-22. Similarly, "the closer to trial an assertion is made, the less weight it is given." *State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782.

{18} The timing of Menchaca's assertion weighs against him. Menchaca had the opportunity to assert his speedy trial right on many occasions in the years leading up to his trial, yet he failed to do so until trial was nearly upon him. Menchaca failed to assert his speedy trial right at two arraignments. He either stipulated or failed to object to any of the State's requested continuances over almost four years. He also

10

caused over one year of delay. Thus, Menchaca acquiesced to the delay, without asserting his speedy trial right, until he filed a motion to dismiss the indictment less than a month before trial began. This last-minute assertion does not support Menchaca's claim that he meaningfully asserted his speedy trial right. *See Barker*, 407 U.S. at 534 (finding no speedy trial violation where "[d]espite the fact that counsel had notice of the motions for continuances, the record shows no action whatever taken [for over three years] that could be construed as the assertion of the speedy trial right" (footnote omitted)).

{19} Moreover, the manner in which Menchaca asserted his right weighs against him. When a defendant's last-minute assertion of the speedy trial right comes in the form of a motion to dismiss the indictment, we accord little weight to the defendant's assertion of that right. *See Maddox*, 2008-NMSC-062, ¶¶ 29-31 (finding the defendant's motion to dismiss filed five days before trial was "neither timely nor forceful" assertion of the right), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48; *see also Tortolito*, 1997-NMCA-128, ¶ 17 (finding the defendant's late assertion through a motion to dismiss did not weigh in the defendant's favor). Menchaca asserted his right to a speedy trial in the form of a motion to dismiss the indictment without offering an alternative motion for immediate trial. This indicates

11

an attempt to secure the remedy of dismissal, but it does not indicate that Menchaca actually intended to assert his right to a speedy trial. *Cf. Barker*, 407 U.S. at 535 (characterizing the defendant's motion to dismiss without an alternative motion for immediate trial as evidence that the defendant "hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, [but] he definitely did not want to be tried"). Under these circumstances, we determine that Menchaca's assertion of the speedy trial right was neither timely nor forceful. The third *Barker* factor does not weigh in his favor.

**D.      Menchaca was not prejudiced by the delay**

{20}      "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. Menchaca argues that he suffered prejudice because a potential witness, J.T. Melendres, died during the four years it took to bring Menchaca to trial. Menchaca argues that Melendres's testimony was essential to his case because Melendres would have testified that he did not see Menchaca with Tapia and Ramirez when they came to Melendres's house to get a handgun before the shooting. We conclude that Melendres's death did not prejudice Menchaca.

{21}      We analyze prejudice to the accused in light of three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the

accused, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. The defendant bears the burden of production on the issue of prejudice. *Maddox*, 2008-NMSC-062, ¶ 32.

{22} Although the length of Menchaca's pretrial incarceration was considerable, Menchaca does not argue that it was oppressive, nor the cause of excessive anxiety or concern.[2] "[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers." *Garza*, 2009-NMSC-038, ¶ 35. Therefore, Menchaca has not carried his burden regarding the first two interests of our prejudice analysis.

{23} Instead, Menchaca argues that he was prejudiced because his defense was impaired by Melendres's death in March 2011. "The third type of prejudice is the most serious." *Id.* ¶ 36 (internal quotation marks and citation omitted). As such, the defendant must "state[] with particularity what exculpatory testimony would have

[2]Menchaca argued in the district court that his lengthy pretrial incarceration was oppressive because the jail was overcrowded, he had no opportunity to learn a skill or continue his education, and he was deprived of direct physical contact with family members. Menchaca fails to raise this argument on appeal. Therefore, we decline to address it. *See State v. Rendleman*, 2003-NMCA-150, ¶ 50, 134 N.M. 744, 82 P.3d 554 (refusing to consider an argument made in the district court but not raised on appeal), *overruled on other grounds by State v. Myers*, 2009-NMSC-016, ¶ 32, 146 N.M. 128, 207 P.3d 1105, *reversed on other grounds by State v. Myers*, 2011-NMSC-028, ¶ 46, 150 N.M. 1, 256 P.3d 13.

been offered and . . . present evidence that the delay caused the witness's unavailability." *Id.* (internal quotation marks and citations omitted).

{24} Menchaca has not shown that Melendres's death caused actual prejudice to the defense. Melendres was listed as a witness for the State. According to the State, Melendres would have testified that Menchaca was a member of the Southside Royal Knights gang, and that their gang color is red. The State claims that Melendres would have testified that he was friends with Menchaca and Ramirez, and Ramirez came to his house the night of the party and told him that Menchaca got jumped and wanted revenge. The State also claims that Melendres would have further testified that he saw the getaway vehicle next to his house after the murder. Melendres's testimony would have supported the State's case, not Menchaca's. Although Menchaca reserved the right to call Melendres, Melendres's proposed testimony was not inherently exculpatory. The fact that Melendres did not see Menchaca on the night of the shooting does not establish that Menchaca did not commit the shooting. Thus, Menchaca has not carried his burden regarding the third interest of our prejudice analysis.

**E.      Balancing test**

{25} Although Menchaca's forty-seven month pre-trial delay was presumptively

14

prejudicial, upon balancing the other *Barker* factors, we do not find a constitutional violation. Menchaca agreed to delay his trial and did not assert his speedy trial right until the trial was imminent. Additionally, Menchaca failed to show that he was prejudiced by the delay. "[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Barker*, 407 U.S. at 536. We conclude that Menchaca's constitutional right to a speedy trial was not violated. We therefore affirm the district court's denial of his motion to dismiss.

## II.     MENCHACA HAS NOT ESTABLISHED THAT HIS COUNSEL WAS INEFFECTIVE

{26}     Menchaca argues that his trial counsel was constitutionally ineffective by failing to assert Menchaca's speedy trial rights earlier in the proceeding. In addition, Menchaca argues that his counsel was ineffective by failing to properly impeach the two co-defendants with their previous statements. Neither of these arguments is persuasive.

{27}     When a claim of ineffective assistance of counsel is first raised on direct appeal, we evaluate the facts in the record. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. In evaluating ineffective assistance of counsel claims, New Mexico

15

follows the test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The defendant must first show that counsel's performance fell below that of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. The defendant must then show that he was prejudiced by counsel's deficient performance. *Id.* "A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

{28} Menchaca has failed to make a prima facie case of ineffective assistance of counsel. Menchaca's case was extremely complex due to the nature of the charges, the number of co-defendants and witnesses, and the volume of discovery, including forensic evidence. To provide a comprehensive and effective defense, Menchaca's counsel may have made a strategic decision *not* to demand a speedy trial. One reason not to demand a speedy trial could be the amount of forensic evidence in this case. It took a long time for the forensic tests to be completed and provided to the parties. It may have been wise for counsel to wait for the test results because they could have exonerated Menchaca or aided in his defense.

{29} Menchaca does not point to anything in the record to show that his attorney's

16

failure to assert his speedy trial rights earlier was not a tactical decision. "Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. Because the record is not sufficient to establish whether the actions taken by Menchaca's counsel were reasonable, "this Court prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *Id.*

{30}     Regarding the impeachment of Ramirez and Tapia, we conclude that based on the record, Menchaca's counsel properly and thoroughly impeached both witnesses. During his cross-examination of Ramirez, Menchaca's counsel asked Ramirez:

> Q.     This is now the fourth story you've given regarding the events that occurred September 7th and September 8th of 2007, correct?
>
> A.     Yes, sir.
>
> Q.     And all your stories are different, are they not?
>
> A.     Yes, sir.
>
> Q.     And you said you have some of your stories to protect Moises?
>
> A.     Yes, sir.

Menchaca's counsel then asked specific questions regarding Ramirez's different accounts. In fact, under questioning from Menchaca's counsel, Ramirez admitted to

lying in previous accounts:

Q. You never said anything about going back to J.T. Melendres's house.

A. I'm not sure what I said, sir. I don't believe so.

Q. First story.

A. First story? I don't remember it word for word what I said. I was just lying.

. . .

Q. You gave your first story?

A. Yes, sir.

Q. Which was full of lies?

A. Yes, sir.

Q. You lied?

A. Yes sir.

Q. You lied to Detective Rosa?

A. Yes sir.

{31} Menchaca's counsel also effectively impeached Tapia. He specifically asked Tapia about discrepancies between the first statement Tapia gave to police, which was not recorded, and a later recorded statement given to Detective Edgar Rosa, refreshing

Tapia's recollection by presenting him with the recorded statement. Menchaca's counsel concluded his impeachment of Tapia with the following exchange:

> Q. So you've got a couple of different stories here, don't you?

> A. Yeah.

{32} Defense counsel's impeachment of Ramirez and Tapia was thorough. Menchaca's counsel effectively placed the credibility of both witnesses at issue by using their prior accounts of events to point out inconsistencies in their trial testimony.

## III. THE DISTRICT COURT PROPERLY ADMITTED MENCHACA'S CELL PHONE RECORDS

{33} The shooting for which Menchaca was convicted began with an altercation at James Bonnett's house party. That altercation ended with Bonnett punching Menchaca in the face, knocking him unconscious. Ramirez and Tapia then took Menchaca and left the premises. After they left, Tapia and Bonnett spoke on the phone. Tapia told Bonnett his behavior was "fucked up" and asked why he hit "the little homie." Bonnett testified that he heard someone in the background say, "You know what, fuck him. We'll take care of it later."

{34} Shortly before they returned to the party, Menchaca called Ramirez's cousins, who were still at the party, and told them to leave the house. Ramirez, Tapia, and Menchaca returned to Bonnett's neighborhood in an SUV. Menchaca got out,

carrying weapons, and approached Bonnett's house on foot while Ramirez and Tapia waited in the SUV. Menchaca called Tapia on his cell phone to ask them to move the SUV closer to the house and then opened fire.

**{35}** Menchaca argues that the district court erred in admitting his cell phone records through the testimony of Detective Rosa. The records admitted into evidence covered all call details and text usage from September 7, 2007 to September 8, 2007 occurring on a telephone number attributed to Menchaca. During Detective Rosa's testimony, Menchaca objected to the admission of his cell phone records on the basis of hearsay and the Confrontation Clause of the Sixth Amendment. The district court ruled that the cell phone records were admissible under Rule 11-902(K) NMRA (2007) and that the records were not testimonial so as to require a Confrontation Clause analysis. On appeal, Menchaca argues that the district court's ruling was erroneous on both the hearsay and the Confrontation Clause issues. We disagree.

**{36}** "On review we defer to the trial judge's decision to admit or exclude evidence and we will not reverse absent a clear abuse of discretion." *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756. Appellate courts review de novo the question of whether the Confrontation Clause has been violated by the admission of hearsay evidence. *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d

110.

**{37}** Under Rule 11-902(K), a certified record of a regularly conducted activity is admissible as a self-authenticating document if it meets the requirements of Rule 11-803(F) NMRA (2007). Rule 11-803(F) requires that the record was "made at or near the time by . . . a person with knowledge, if kept in the course of a regularly conducted business activity, and [making the record] was the regular practice of that business activity."

**{38}** At trial, the State presented a subscribed and sworn certification of records from the custodian of records for the cell phone company, Cricket Communications, Inc. The certification meets all of the requirements of Rule 11-803(F). First, the certification states "[t]he raw data contained in the records now provided was made and captured by the computer at or near the time of the occurrence of the matters set forth in the records." *See* Rule 11-803(F) (requiring that the record "was made at or near the time" of its occurrence). The certification also states "[t]he raw data, and the documents and records created and provided herein were and are kept in the usual course of the regular business activity of Cricket Communications, Inc., and it was/is the regular practice of Cricket Communications to make and keep such raw data, records, and documents." *See* Rule 11-803(F) (requiring that (1) the record was kept

21

in the regular course of business, and (2) making the record was a regular practice of the business).  Because the certification of records presented by the State meets the requirements of Rules 11-803 and 11-902, the district court did not abuse its discretion in admitting Menchaca's phone records.

{39}     We now turn to Menchaca's argument that the admission of his phone records violated his constitutional right to confront witnesses against him.  Pursuant to the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  This clause "bars the admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *State v. Gurule*, 2013-NMSC-025, ¶ 33, 303 P.3d 838 (internal quotation marks and citations omitted).  A statement is testimonial when its primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435 (internal quotation marks and citation omitted).

{40}     We agree with the district court's determination that Menchaca's phone records are not testimonial.  The records were not created for the purpose of proving facts relevant to an element of a crime.  As discussed *supra*, the phone records themselves

22

were admissible as business records under Rule 11-902(K).  Business records by their nature usually are not testimonial.  *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy.").  In addition, an affidavit that merely authenticates an admissible record, such as the one presented in this case, is excepted from confrontation requirements.  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23 (2009) ("A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not . . . *create* a record for the sole purpose of providing evidence against a defendant.").

## IV.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING MENCHACA'S MOTION FOR AN EVIDENTIARY HEARING ON PROSECUTORIAL MISCONDUCT

{41}     Menchaca alleges that the prosecution engaged in misconduct by tampering with witnesses.  He claims that after Tapia pled but before Menchaca's trial, a state investigator removed Tapia from jail and took him to the District Attorney's Office, where the investigator discussed Ramirez's story with Tapia, giving Tapia details of what Ramirez said during a previous meeting with prosecutors.  At trial, Menchaca's counsel requested an evidentiary hearing on the issue.  The district court denied the

23

motion.

{42} We review the district court's ruling on the issue of prosecutorial misconduct under a deferential abuse of discretion standard. *State v. Trujillo*, 2002-NMSC-005, ¶ 49, 131 N.M. 709, 42 P.3d 814. "[T]he trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. "The trial court's determination of these questions will not be disturbed unless its ruling is arbitrary, capricious, or beyond reason." *Id.*

{43} The district court did not abuse its discretion in denying Menchaca's motion for an evidentiary hearing on the issue of prosecutorial misconduct. The district court noted that it is not improper for either the State or the defense to interview a potential witness who is no longer a co-defendant and to acquire additional information from that witness. In addition, the district court gave Menchaca's counsel the opportunity to question Tapia about what had occurred later in the proceedings. During cross-examination, Menchaca's counsel asked Tapia about Tapia's interview with the state investigator. Tapia only stated that Detective Rosa asked him about his cell phone number; Tapia did not mention any discussion of Ramirez's story.

**V. THE DISTRICT COURT DID NOT ERR IN ADMITTING MENCHACA'S RED SHIRT AND CELL PHONE**

24

{44} Menchaca's red shirt was significant at his trial because the altercation at Bonnett's house party began when a guest insulted Menchaca over the color of his shirt by falsely implying that Menchaca was part of a gang whose members wore red. The shirt was also significant because at least one witness testified that she saw a man in a red shirt pacing in front of the house around the time of the shooting.

{45} After Menchaca called Tapia on his cell phone and asked his co-defendants to move closer to the residence, Menchaca shot at the house. At least two witnesses testified that they saw a man in a red shirt around the time of the shooting.

{46} Menchaca argues that the district court erred in admitting his red shirt and cell phone into evidence without a proper chain of custody. The two items were recovered through a consensual search of Menchaca's residence. We conclude that a proper chain of custody was established for the admission of both items through the testimony of Detective Raul Ortiz.

{47} "On review we defer to the trial judge's decision to admit or exclude evidence and we will not reverse absent a clear abuse of discretion." *Apodaca*, 1994-NMSC-121, ¶ 23. "[T]o admit real or demonstrative evidence, the evidence must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered into evidence." *State v. Rubio*, 2002-NMCA-

007, ¶ 16, 131 N.M. 479, 39 P.3d 144 (internal quotation marks and citation omitted). "The admission of real or demonstrative evidence does not require the State to establish the chain of custody in sufficient detail to exclude all possibility of tampering." *State v. Rodriguez*, 2009-NMCA-090, ¶ 24, 46 N.M. 824, 215 P.3d 762. There is no abuse of discretion when a preponderance of the evidence shows the evidence "is what it purports to be." *State v. Sanchez*, 1982-NMCA-155, ¶ 15, 98 N.M. 781, 652 P.2d 1232.

{48}     The record reflects that Detective Ortiz sufficiently identified the chain of custody for Menchaca's red shirt and cell phone to be admitted into evidence. Detective Ortiz testified that he was involved in the search of Menchaca's home along with Detective Mike Garcia, and that he was present when the red shirt and cell phone were located in Menchaca's bedroom. Detective Ortiz confirmed that he personally observed Detective Garcia recover the phone and the red shirt and he confirmed Detective Garcia's signature on the recovery bag. Detective Ortiz identified the cell phone as State's Exhibit 117 and the red shirt as State's Exhibit 116.

## VI.     SUFFICIENCY OF THE EVIDENCE

{49}     Menchaca argues that his conviction was not supported by substantial evidence. He specifically claims that the evidence presented at trial was not sufficient to prove

26

that he was the actual shooter. Menchaca also questions the credibility of several of the State's witnesses. According to Menchaca, the evidence presented at trial points to Tapia as the shooter.

**{50}** "The test to determine the sufficiency of evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 1984-NMSC-073, ¶ 4, 101 N.M. 424, 684 P.2d 510. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. An appellate court should not re-weigh the evidence to determine whether there was another hypothesis that would support the defendant's innocence or substitute its view of the evidence for that of the fact-finder. *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72.

**{51}** An abundance of evidence in the record points to Menchaca as the shooter. Tapia testified that it was Menchaca's idea to go to Melendres's house, where Tapia and Ramirez picked up a handgun. Ramirez testified that he, Tapia, and Menchaca returned to Bonnett's house, intending to shoot it up. Both Tapia and Ramirez

27

testified that when they arrived at Bonnett's house, Menchaca left the vehicle and approached Bonnett's house with at least one gun in his hand. At least two guests at the party testified that they saw someone wearing a red shirt around the time of the shooting. Both Tapia and Ramirez also testified that Menchaca returned to the SUV after the shooting with both guns. Ramirez identified Menchaca in court as the shooter. We therefore conclude that Menchaca's conviction was supported by substantial evidence.

**{52}** Menchaca's theory that Tapia was the shooter was rebutted by both Ramirez and Tapia. Ramirez specifically testified that Tapia did not pull the trigger on either of the two guns. Tapia testified that he saw Menchaca exit the SUV with both guns, heard shots, and then saw Menchaca running back to the SUV with the guns. In light of the foregoing evidence, we conclude that there was substantial evidence for a reasonable jury to convict Menchaca of first degree murder.

**CONCLUSION**

**{53}** Because the issues raised in Menchaca's appeal are without merit, we affirm all of his convictions.

**{54}** **IT IS SO ORDERED.**

_____

28

                                             **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**